IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RAELYNN J. HILLHOUSE,           )<br>                                                           )<br>           Plaintiff,                          )<br>                                                           )<br>      vs.                                            )<br>                                                           )<br>HAWAII BEHAVIORAL HEALTH, )<br>LLC; GEORGE CHOPIVSKY, JR. in )<br>his individual capacity,                )<br>                                                           )<br>           Defendants.                      )<br>_____ ) | CIV. NO. 14-155 LEK-BMK<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION TO DISQUALIFY<br>COUNSEL FOR DEFENDANTS |

ORDER DENYING PLAINTIFF'S MOTION
TO DISQUALIFY COUNSEL FOR DEFENDANTS

Before the Court is Plaintiff Raelynn J. Hillhouse's ("Hillhouse") Motion to Disqualify Marr Jones & Wang, LLP ("MJW"), Counsel for Defendants Hawaii Behavioral Health, LLC ("HBH") and George Chopivsky, Jr. ("Chopivsky"). (Doc. 13.) Hillhouse asserts that attorney Sarah Wang ("Wang"), a partner at MJW, established a fiduciary, attorney-client relationship with her with respect to matters and issues directly related to issues raised in this action, which are materially adverse to Hillhouse's interest. In addition, Hillhouse states that Wang is a material witness in this case. Hillhouse claims that these

alleged facts place Wang in violation of Hawaii Rules of Professional Conduct ("HRPC") Rules 1.9(a) and 3.7(a), and necessitate the disqualification of Wang's firm.

The Court heard this Motion on July, 25 2014. After careful consideration of the Motion, the supporting and opposing memoranda, and the arguments of counsel, the Court finds that Hillhouse failed to meet her burden of showing that an attorney-client relationship between Wang and her was ever established. The Court also concludes that even if Wang may be called as a witness, disqualification of MJW is not required because Wang is not acting as an advocate for HBH in this case. Accordingly, the Motion is denied.

FACTUAL BACKGROUND

Hillhouse's suit involves claims of discrimination and retaliation by Defendants during her employment as Chief Executive Officer and President of HBH. (Complaint at 2.) More specifically, Hillhouse alleges that beginning in July of 2011, she was subjected to repeated acts of sexual harassment by male executives, and that after subsequently reporting this discrimination, was subjected to retaliation ultimately leading to her constructive discharge in May of 2012. (Id. at 2, 6.)

In the 1990s, as an associate attorney at the Cades Schutte firm, Wang

did work for HBH and interacted with Cynthia Curatalo, then HBH's Executive Director. (Opp. at 2.) In April of 1998, after Wang joined the law firm Marr Jones & Pepper,[1] Curatalo contacted Wang for legal advice. (Id. at 2-3.) Thereafter, HBH entered into an agreement with Wang for legal representation of HBH. (Id. at 3.)

Initially, Wang's point of contact at HBH continued to be Curatalo. (Id.) Overtime, however, Hillhouse became Wang's primary contact for legal services and advice pertaining to employment-related issues at HBH. (Id.) Wang asserts that although she and Hillhouse became friends and socialized outside of work, their interactions for the purposes of providing legal services were always in Hillhouse's capacity as a representative of HBH. (Id. at 3-4.) Wang asserts that the legal services she provided were always solely provided to HBH and that she did not provide or intend to provide legal services to Hillhouse, or every enter into any arrangement to bill Hillhouse for legal services. (Id. at 3.)

Hillhouse, on the other hand, asserts that Wang provided her with personal legal advice on six specific occasions, which constituted the creation of their attorney client relationship:

> 1) Hillhouse states that in July of 2011, she had dinner at Wang's house and discussed leaving HBH for "various reasons." Hillhouse contends

---

[1] Marr Jones & Pepper later become Marr Jones & Wang.

that at that dinner Wang told her MJW would end its relationship with HBH if Hillhouse opted to leave'

2) In September of 2011, Hillhouse again dined at Wang's home and asserts that she told Wang specific details relating to her sexual harassment at HBH. According to Hillhouse, Wang told her that what she had described was "quid pro quo sexual harassment," and advised her to "document everything;"

3) Also in September of 2011, Hillhouse and Wang had dinner out at a local restaurant. Hillhouse claims that she and Wang "had a further long talk regarding my employment issues with HBH," and that she specifically asked Wang to keep the information she had shared confidential;

4) On January 28, 2012, while attending a memorial service for Wang's father, Hillhouse claims she told Wang specific details relating to Chopivsky's retaliatory actions, and that Wang again told her to "document everything;"

5) On February 7, 2012, Hillhouse states she had an extensive phone conversation with Wang during which they discussed Chopivsky's "ongoing retaliatory acts," and during which Hillhouse received advice from Wang regarding the preservation of her employment benefits. Hillhouse states that Wang also warned her against retaining any HBH manuals and "about wiping computer drives;" and

6) On February 12, 2012, Hillhouse states she and Wang spoke by phone and Hillhouse explained why she felt compelled to resign from HBH. During this conversation Wang purportedly opined that Hillhouse had been subjected to "illegal retaliation." Hillhouse states that she also received legal advice regarding her post-discharge duties.

(Hillhouse Decl. ¶¶ 17-22.) In addition to these six interactions pertaining to Hillhouse's employment at HBH, Hillhouse also presented evidence that another attorney at MJR, Darin R. Leong, provided 1.3 hours in legal services

4

to Hillhouse in 2007, concerning intellectual property rights in book she had written. (Reply Exhs. 11-13.)

Wang acknowledges that during various social occasions, Hillhouse attempted to get personal legal advice, but states that she repeatedly told Hillhouse that she was HBH's attorney and could not provide her with such advice. (Opp. at 4.) As to the specific statements that Hillhouse attributes to Wang, Wang denies ever having told Hillhouse that MJW would end its relationship with HBH, denies ever telling Hillhouse she had been subjected to "quid pro quo sexual harassment," denies telling Hillhouse to "document everything," and denies telling Hillhouse that she had been subjected to retaliation. (Wang Decl. ¶¶ 9-14.) In general, Wang asserts that Hillhouse was well aware that she represented HBH and not Hillhouse individually. Wang asserts that Hillhouse demonstrated that she understood this state of affairs when she asked Wang to refer her to an attorney who could help her draft an employment agreement with HBH. (Id. ¶ 10)

## DISCUSSION

I. Disqualification Pursuant to HRPC Rule 1.9

HRPC Rule 1.9(a) states,

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the

former client unless the former client consents after consultation, and confirms in writing.

As the party moving for disqualification and pursuant to Rule 1.9, Hillhouse has the burden of establishing the following by a preponderance of the evidence: "(1) the existence of a prior attorney-client relationship with the attorney now sought to be disqualified; and (2) that the matter involved in the prior representation is substantially related to the matters embraced within the pending suit, wherein the attorney appears on behalf of the opposing party." In re Johore Inv. Co. (U.S.A.), Inc., 157 B.R. 671, 675 (D. Haw. 1985). The threshold inquiry is whether an attorney-client relationship existed between the parties. Without such a relationship, Rule 1.9 is not applicable and provides no basis for disqualification. See Otaka v. Klein, 791 P.2d 713, 717 (Haw. 1990).

An attorney-client relationship may be established by express formal agreement or, in the absence of formal agreement, where a "fiduciary obligation or an implied professional relation[ship]" exists. Otaka, 791 P.2d at 717. "A fiduciary relationship may result because of the nature of the work performed and the circumstances under which confidential information is divulged. Legal consultation occurs when the client believes that he is approaching an attorney in a professional capacity with a manifest intent to seek professional legal advice." Id. at 717. The client's belief, however, "must be objectively reasonable under the

totality of the circumstances, which includes consideration of factors such as intent of alleged client and attorney and payment arrangements." Boskoff v. Yano, 57 F. Supp. 2d 994, 998 (D. Haw. 1998).

"A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." HRPC Rule 1.13(a). "This does not mean, however, that the constituents of the organizational client are the clients of the lawyer." HRPC Rule 1.13 cmnt. 2. That said, when dealing with the constituents of an organizational client, it is the lawyer's responsibility to "explain the identity of the client" when the lawyer "knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing." HRPC Rule 1.13(f).

In the first instance, Hillhouse disputes the standard for attorney disqualification laid out above. Hillhouse urges the Court to ignore the holding in Boskoff, which states that a client's belief that an attorney-client relationship exists "must be objectively reasonable under the totality of the circumstances," as well as this Court's decision in McDevitt v. Guenther, 522 F.Supp.2d 1272, 1280-81 (D. Haw. 2007) (holding that whether an attorney-client relationship exists is a question of fact based upon several factors.) Rather Hillhouse's reply brief argues, citing Otaka, that her subjective understanding of her relationship with Wang is

solely determinative of whether an attorney-client relationship was formed. The Court disagrees.

While Otaka does state that the "deciding factor is what the prospective client thought when he made the disclosure, not what the lawyer thought," the Hawaii Supreme Court's decision in Otaka does not rest solely upon the client's subjective belief. Otaka, 791 P.2d at 717. To the contrary, in Otaka the Supreme Court tested the subjective beliefs of the purported client against evidence of the actual interactions of the parties. The Supreme Court analyzed evidence of what the attorney did and said, took account of the fact that the attorney had been paid for his work, and endeavored to characterize the nature of the advice that the attorney had undisputedly offered as either legal or of a business investment nature. Id. at 717-18. In practice the Hawaii Supreme Court did precisely what Boskoff later instructs, tested the reasonableness of the client's beliefs under the totality of the circumstances. Accordingly, this Court sees no conflict between the Hawaii Supreme Court's decision in Otaka, and later decisions of this Court in Boskoff and McDevitt, which simply elaborated upon established principles.

The Court finds that while a purported client's subjective understanding of their relationship is a critical factor in determining whether an attorney-client relationship has been formed, the client's understanding must be

8

objectively reasonable under the circumstances   To determine whether a client's understanding is objectively reasonable, the Court should consider the nature of the legal work performed, the circumstances under which the client conveyed information to the attorney, see Otaka, 791 P.2d at 717-18, the intent of the attorney, the existence or absence of payment arrangements, Boskoff, 57 F. Supp. 2d at 998, and the conduct of the parties.   McDevitt, 522 F.Supp.2d at 1281.

Related to the argument that the Court need only consider her subjective beliefs, Hillhouse also asserts that disqualification of an attorney need only be based upon the "appearance of impropriety," as opposed to any actual impropriety.[2]   The "appearance of impropriety" standard, as it relates to the disqualification of an attorney, is derived from Canon 9 of the Code of Professional Responsibility.   The Code of Professional Responsibility, in effect when the Hawaii Supreme Court decided Otaka, has been replaced, however, by the Hawaii Rules of Professional Responsibility, which are based upon the American Bar Association ("ABA") Model Rules of Professional Responsibility.   The ABA Model Rules have specifically discredited the "appearance of impropriety" as a substantive standard for attorney disqualification.   See Edwards v. 360

---

[2] In arguing for the appearance of impropriety standard, Hillhouse quotes Estate of Damon, 199 P.3d 89, 97 (Haw. 2008) ("we have held that the test for disqualification due to the 'appearance of impropriety' is an objective one' . . . .").   Damon, however, was concerned with judicial disqualification pursuant to the Code of Judicial Conduct, not the disqualification of an attorney under the Hawaii Rules of Professional Responsibility.

Communications, 189 F.R.D. 433, 437-38 (D. Nev. 1999) (noting that, problematically, under the appearance of impropriety standard disqualification could be based on little more than the subjective judgment of the former client); see also Lansing-Delaware Water dist. v. Oak Lane Park, Inc., 808 P.2d 1369, 1375-76 (Kan. 1991) (comparing disqualification standards based upon the broad principles of Code of Professional Responsibility with more recently adopted specific standards under the ABA Model Rules). Accordingly, the Court finds that the appearance of impropriety is not a substantive standard for disqualification, and relies instead on the standards and factors outlined above.

As to the substance of Hillhouse's claim, there was clearly no express agreement between the parties. Regarding the creation of an implied attorney-client relationship, Hillhouse has presented no substantive evidence, beyond her declaration, of the information that she conveyed to Wang, or of any response, information, or advice Wang may have offered in return. The Court is faced with a he-said-she-said-situation in which the declarations of the parties' directly contradict each other. However, even if many of Hillhouse's statements are accepted as true, the Court finds that they are insufficient to overcome the burden of establishing, by a preponderance of the evidence, that an attorney client relationship was formed.

Hillhouse states that Wang told her to "document everything," warned her against retaining any HBH manuals and "about wiping computer drives," and advised her regarding her post-discharge duties. None of these statements are beyond the scope of what an attorney charged with handling employment-related issues at HBH would tell any generic employee of the company during the course of representing HBH. The Court finds that under the circumstances of this case, these statements do not reasonably constitute professional legal advice to Hillhouse.

Virtually all of the interactions described by Hillhouse took place in purely social contexts. There is no evidence that Hillhouse ever paid for or contemplated paying for Wang's purported legal advice. Moreover, as the HBH executive charged with interacting with Wang with regard to Wang's legal representation of HBH, Hillhouse could be reasonably expected to be well aware of Wang's position as counsel for the company. Accordingly, the Court finds Hillhouse has failed to establish that she and Wang had an attorney-client relationship, and there is therefore no basis for disqualifying Wang under HRPC Rule 1.9.

II.     Disqualification Pursuant to HRPC Rule 3.7

HRPC Rule 3.7 states,

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client."
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9 of these Rules

"Because of th[e] potential for abuse," disqualification motions premised upon HRPC Rule 3.7 "should be subjected to particularly strict judicial scrutiny." Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985).

The comments to Rule 3.7 indicate that the rule is concerned with confusion and possible prejudice that may arise when the roles of advocate and witness are combined. The Court observes that Wang is not acting as an advocate for HBH in this case, although other attorneys at MJW are. Therefore subsection (a) of Rule 3.7 is inapplicable. Subsection (b) provides that attorneys in a firm may act as advocates at trial where another attorney at the same firm may be called as a witness, provided they are not independently barred from doing so under Rules 1.9 or 1.7.

As discussed above, Wang should not be subject to disqualification under Rule 1.9 because Hillhouse failed to carry her burden of showing that an

attorney-client relationship was established between them. HRPC Rule 1.7 addresses conflicts of interest arising from representing clients with opposing interests. As with rule 1.9, a threshold element for disqualification due to client conflict would be that Hillhouse was in fact a client of Wang or MJW. As already discussed, the Court finds that Hillhouse was not in fact a client of Wang. To the extent that another attorney at MJW did provide 1.3 hours of legal services to Hillhouse in 2007 concerning property rights in a book, this brief client relationship has no bearing on the issues in this case. Accordingly, even assuming that Hillhouse has a valid basis for calling Wang as a witness, the Court finds that Rule 3.7 does not provide a basis for disqualifying Wang or her firm.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Disqualify is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 18, 2014



/S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Raelynn J. Hillhouse v. Hawaii Behavioral Health, LLC, et al., CIV. NO. 14-155 LEK-BMK, ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL FOR DEFENDANTS