IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RAELYNN J. HILLHOUSE, | ) | CIVIL 14-00155 LEK-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAWAII BEHAVORIAL HEALTH, | ) | |
| LLC; GEORGE CHOPIVSKY, JR. in | ) | |
| his individual capacity, | ) | |
| | ) | |
| Defendants. | | |

_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CHOPIVSKY'S
MOTION FOR PARTIAL DISMISSAL OF COMPLAINT FILED ON MARCH 28, 2014**

Before the Court is Defendant George Chopivsky, Jr.'s
("Chopivsky") Motion for Partial Dismissal of Complaint Filed on
March 28, 2014 ("Motion"), filed on April 29, 2014. [Dkt. no.
16.] Plaintiff Raelynn J. Hillhouse ("Plaintiff") filed her
memorandum in opposition on August 8, 2014, and Chopivsky filed
his reply on August 14, 2014. [Dkt. nos. 36, 37.] This matter
came on for hearing on August 29, 2014. After careful
consideration of the Motion, supporting and opposing memoranda,
and the arguments of counsel, the Court HEREBY GRANTS IN PART AND
DENIES IN PART Chopivsky's Motion for the reasons set forth
below.

**BACKGROUND**

On March 28, 2014, Plaintiff filed her Complaint
against her former employer, Hawaii Behavorial Health, LLC

("HBH"), a "manager-managed LLC," and Chopivsky, HBH's "majority owner and current Chief Executive Officer and President," in his individual capacity, asserting jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-1, *et seq.*, and supplemental jurisdiction. [Complaint at ¶¶ 2-4, 8-9.] The Complaint focuses on a series of events, beginning in July 2011, that culminated in Plaintiff's resignation from HBH in February 2012, and her departure in May 2012 after a three-month wind-down period.

Plaintiff alleges that she: was employed by HBH from 1997; held various positions, including Chief Operations Officer from 2007 to 2011; and became Chief Executive Officer ("CEO") and President in October 2011. [Id. at ¶¶ 6, 10-12.] She alleges that she was successful in her roles at HBH and, after she took over as CEO, she produced an aggressive turnaround of the company's profitability. [Id. at ¶¶ 13-14.]

Plaintiff alleges, however, that during the time she ascended to the CEO position and as CEO, she experienced discrimination and harassment based on her gender and sexual orientation, which led to her constructive discharge. Beginning in July 2011 and continuing through the end of August 2011, Plaintiff alleges, former President of HBH and friend of Chopivsky, Alexander J. Hoinsky ("Hoinsky"), made unwanted sexual advances toward Plaintiff and harassed her during business trips

2

to Hawai`i from his home in New Jersey.  [Id. at ¶¶ 15-32.]
After a specific incident, on August 29, 2011, Plaintiff told her
partner, Cynthia Curatalo, and HBH Director of Operations,
Kathy Iona ("Iona"), of the harassment.  [Id. at ¶ 31.]

Plaintiff alleges that, on September 2, 2011, she
submitted a detailed written complaint – including a letter from
Iona, who had directly witnessed some of the events – to
Chopivsky and, on September 14 and 15, 2011, she personally met
with him in Washington D.C.  [Id. at ¶¶ 33-35.]  On September 15,
2011, Chopivsky offered Plaintiff the position of President and
CEO of HBH, and Plaintiff accepted, subject to an oral agreement
that Hoinsky would not be involved with Plaintiff or HBH, and
that she would not be subject to harassment or retaliation.
Chopivsky agreed and, on October 7, 2011, they executed an
employment agreement for the position.  [Id. at ¶¶ 37-38.]

Plaintiff alleges that, thereafter, Chopivsky created a
hostile work environment and unequal terms of employment for
Plaintiff, and violated their employment agreement by,
essentially: abusing her verbally and over email; micro-managing
her; undermining her authority, including in front of her
subordinates, and by working directly and secretly with HBH's
Chief Financial Officer, Michael Lukson ("Lukson"); stripping her
of job duties and the authority she needed in order for her and
HBH to succeed; placing impossible and unhealthy demands on her

3

and then blaming her for purported failures; forcing her to do a self-evaluation to create a record whereby Chopivsky could drive her out of HBH; involving Hoinsky in operations and decision-making; and actively working with Hoinsky and Lukson to push her out of HBH.  [Id. at ¶¶ 39-76.]

On February 9, 2012, Plaintiff alleges that she told an officer at the State of Hawai`i Department of Health, Janet LaDue ("LaDue"), that Plaintiff would soon be forced to resign because she had been ordered to make budget cuts that would violate HBH's contracts with the State and endanger foster children in its care.  Plaintiff alleges that this constituted whistle-blowing under Hawai`i law.  She further alleges that, on or about February 10, 2012, Chopivsky called Lukson while, unbeknownst to Chopivsky, Plaintiff was in Lukson's office.  She further alleges that, during the conversation, Chopivsky told Lukson of his plans to force Plaintiff out of HBH and, that night, Plaintiff tendered her resignation and was constructively discharged.  [Id. at ¶¶ 77-81.]

After she submitted her resignation, but before she officially left her position, Chopivsky and HBH continued to harass and retaliate against her, including by: suspending and putting her on a probation plan; changing the locks on her offices and tampering with her personal possessions; prohibiting access to HBH offices and contact with state regulators; publicly

defaming Plaintiff and threatening her and prospective employers

regarding enforcement of purported non-compete agreements;

refusing to pay Plaintiff benefits; and denying her request for

leave under the Family Medical Leave Act ("FMLA"). [Id. at

¶¶ 82-90.]  In May 2012, Plaintiff filed a complaint with the

Hawai`i Civil Rights Commission ("HCRC") and the United States

Equal Employment Opportunity Commission ("EEOC"), alleging

discrimination and retaliation, and both issued her right to sue

letters.  [Id. at ¶¶ 91-94.]

     The Complaint alleges the following claims:

discrimination based on sex and sexual orientation, pursuant to

Title VII ("Count I"); discrimination based on sex and sexual

orientation, pursuant to Haw. Rev. Stat. Chapter 378

("Count II"); retaliation, pursuant to Title VII ("Count III");

retaliation, pursuant to Haw. Rev. Stat. Chapter 378

("Count IV"); retaliation against a whistleblower in violation of

Haw. Rev. Stat. § 378-62 ("Count V"); failure to pay wages under

Haw. Rev. Stat. Chapter 388 ("Count VI"); wrongful

termination/constructive discharge ("Count VII"); intentional

infliction of emotional distress ("Count VIII"); wrongful

termination/constructive discharge in violation of public policy,

pursuant to Parnar v. Americana Hotels, Inc., 65 Haw. 370, 652

P.2d 625 (1982) ("Count IX" or "Parnar Claim"); defamation

("Count X"); interference with prospective economic advantage

("Count XI"); and invasion of privacy ("Count XII").

Plaintiff seeks the following relief: general and/or compensatory damages; special damages; punitive and/or liquidated or exemplary damages; attorneys' fees and costs; other legal and equitable relief available under state and federal statutes; and all other appropriate relief. [<u>Id.</u> at pgs. 50-51.]

**DISCUSSION**

Chopivsky moves to dismiss all of the employment law claims against him under federal and state law (Counts I-VII, IX), but not the state tort claims (Counts VIII, X-XII).

**I.  <u>Counts I, III, VI and VII</u>**

As an initial matter, Plaintiff concedes that there is no individual liability under Title VII, and she does not oppose the Motion regarding her Title VII claims. [Mem. in Opp. at 6 (citing <u>Miller v. Maxwell's Int'l Inc.</u>, 991 F.2d 583, 587-88 (9th Cir. 1993)).] The Court therefore GRANTS the Motion as to Counts I and III. The Court DISMISSES those Counts WITH PREJUDICE as to Chopivsky because "[i]t is clear that this deficiency cannot be cured by any amendment." <u>Zanze v. Snelling Servs., LLC</u>, 412 F. App'x 994, 996 (9th Cir. 2011).

Plaintiff also does not oppose the Motion as to Count VI for failure to pay wages under Haw. Rev. Stat. Chapter 388, and instead "requests leave of court to amend her complaint" to plead Count VI as an implied contract claim. [Mem. in Opp. at

6

19.]  Thus, the Court GRANTS the Motion as to Count VI, and

DISMISSES that claim against Chopivsky WITHOUT PREJUDICE.  See

Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009)

("Dismissal without leave to amend is improper unless it is

'clear' that the complaint could not be saved by any amendment.")

(citation and internal quotation marks omitted)).

The Court notes that, in the event that Plaintiff

wishes to file an amended complaint, including the contract

claim, she must move the Court to do so, attaching the entire

amended complaint to the motion.  See Local Rule LR10.3 ("Any

party filing or moving to file an amended complaint,

counterclaim, third-party complaint, or answer or reply thereto

shall reproduce the entire pleading as amended and may not

incorporate any part of a prior pleading by reference, except

with leave of court.").  Her request to amend the Complaint, made

in the memorandum in opposition, is improper and therefore the

Court DENIES it.  Cf. Patrick v. 3D Holdings, LLC, Civil No.

13-00638 JMS/KSC, 2014 WL 1094917, at *12 (D. Hawai`i Mar. 18,

2014) ("[t]he proper means of raising claims that have

inadvertently not been raised in the complaint is an amended

complaint, not a brief in opposition to a motion to dismiss"

(alteration in Patrick) (citation and internal quotation marks

omitted)).

Finally, Plaintiff does not oppose the Motion insofar as Chopivosky moves to dismiss Count VII for wrongful termination/constructive discharge. _See_ Reply at 14 (noting Plaintiff's failure to address Chopivsky's challenge to Count VII). The Court therefore GRANTS the Motion as to Count VII, and DISMISSES that Count against Chopivsky WITHOUT PREJUDICE. _See_ _Harris_, 573 F.3d at 737.

## II. **Counts II and IV**

What remains of the Motion largely turns on whether Plaintiff has sufficiently pled discrimination and retaliation claims against Chopivsky in his individual capacity. The Court finds that Plaintiff has not.

The Court's analysis begins with Counts II and IV, for discrimination and retaliation under Haw. Rev. Stat. § 378-2. Plaintiff brings Count II under § 378-2(1)(A), which provides,

It shall be an unlawful discriminatory practice:

(1) Because of race, sex including gender identity or expression, sexual orientation, age, religion, color, ancestry, disability, marital status, arrest and court record, or domestic or sexual violence victim status if the domestic or sexual violence victim provides notice to the victim's employer of such status or the employer has actual knowledge of such status:

(A) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment[.]

She brings Count IV under § 378-2(2), which provides:

It shall be an unlawful discriminatory practice:

. . .

(2) For any employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part[.]

Section 378-1 defines an "employer" as "any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States."  It also defines "person" as "any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States."

Chopivsky argues that the Hawai`i Supreme Court's decision in <u>Lales v. Wholesale Motors Co.</u>, 133 Hawai`i 332, 328 P.3d 341 (2014), forecloses Plaintiff's Counts II and IV because <u>Lales</u> holds that § 378-2(1)(A) and -2(2) do not permit discrimination or retaliation claims against individual employees.  [Mem. in Supp. of Motion at 6-8.]  Plaintiff responds that <u>Lales</u> decided the issue of individual **co-employee** or **supervisor** liability, but expressly reaffirmed two cases, <u>Sam Teague v. Hawaii Civil Rights Commission</u>, 89 Hawai`i 269, 971 P.2d 1104 (Hawai`i 1999), and <u>Schefke v. Reliable Collection</u>

9

Agency, Ltd., 96 Hawai`i 408, 32 P.3d 52 (2001), permitting lawsuits brought against business **owners** in their individual capacities. [Mem. in Opp. at 9-11.] Thus, she argues, Chopivsky as the "majority owner" of HBH, see Complaint at ¶ 9, can be held individually liable.

Chopivsky replies that, even if Sam Teague and Schefke allowed liability of individual owners of corporations, those cases did not address the issue of whether members of limited liability corporations ("LLCs"), such as HBH, can be liable in their individual capacities. [Reply at 6-8.] The Court finds Chopivsky's last point persuasive and concludes that, even if in narrow circumstances this Court were to recognize individual liability of LLC members, Plaintiff has not pled facts supporting those circumstances.

In Lales, a car salesman brought, *inter alia*, discrimination and retaliation claims under Chapter 378 (as well as a Parnar claim) against his former employer, JN Automotive Group ("JN"), and his supervisor, Gary Marxen ("Marxen"). The Hawai`i Supreme Court held that Lales's claims against Marxen failed as a matter of law because Chapter 378 does not apply against individual employees. Lales, 133 Hawai`i at 343-44, 328 P.3d at 352-53. The court held that Haw. Rev. Stat. § 378-2(1)(A) and -2(2) limit liability to "employers," and an individual employee, such as a supervisor, cannot be an

"employer" within the definition supplied by § 378-1. <u>Id.</u> at 344-45, 328 P.3d at 353-54. The court based its interpretation of these sections on: its reading of the statute as a whole and a comparison with sections that clearly and expressly anticipate individual employee liability, i.e., the subsection on aiding and abetting, <u>see</u> *infra* n.2; the legislative history of the statute; and federal courts' limitation on individual employee liability in the similar and persuasive Title VII context. <u>Id.</u> at 345-48, 328 P.3d 354-57.

The court harmonized its decision with earlier precedent including <u>Sam Teague</u> and <u>Schefke</u> and, in doing so, implied that an individual owner might be held liable under § 378-2(1)(A) and -2(2). In <u>Sam Teague</u>, the Hawai`i supreme court affirmed a decision on behalf of an office manager, who brought a § 378-2(1)(A) discrimination claim against both her employer, the two-person business Sam Teague Ltd., and its president and sole stockholder, Sam Teague ("Teague"). The court in that case did not directly address the issue in <u>Lales</u>, but affirmed that the circuit court was within its discretion to uphold the HCRC's inclusion of Teague in his individual capacity in the HCRC charge, since Teague was the agent who had engaged in the specific discriminatory acts. <u>Sam Teague</u>, 89 Hawai`i at 276-77, 971 P.2d at 1111-12. The <u>Lales</u> court noted that the <u>Sam Teague</u> court did not reach the issue of individual employee

11

liability.  <u>Lales</u>, 133 Hawai`i at 348, 328 P.3d at 357 ("this court was not confronted with the correctness of the HCRC's determination in this regard").  It implied, though, that the <u>Sam Teaque</u> court would have had additional grounds to permit the claim against Teaque, since he was, in essence, the alter ego of the business: "Moreover, it is unclear what impact the fact that Teaque was the president and sole shareholder of the two-person business, Sam Teaque, Ltd., had on the HCRC's conclusion that Teaque was an 'employer' under HRS § 378-1."  <u>Id.</u>

In <u>Schefke</u>, the Hawai`i Supreme Court reversed a directed verdict against father and son owners of a debt collection agency in their individual capacities, in an action by an employee brought under §§ 378-2(1)(A), 378-2(2), and 378-2(3). § 378-2(3) provides, "It shall be an unlawful discriminatory practice: . . . (3) For any person, whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so[.]"  The <u>Schefke</u> court based its decision, at least in part, on the fact that the circuit court could have found that the two owners aided and abetted in the retaliation by, for example, changing the office locks and denying the plaintiff a Christmas bonus because of his HCRC complaint.  96 Hawai`i at 441-42, 32 P.3d at 85-86.  While the <u>Lales</u> Court recognized this basis, it also distinguished the

opinion since it "involved discrimination claims against an employer and its owners, and not an individual employee, as is the case here." <u>Lales</u>, 133 Haw. at 349, 328 P.3d at 358 (citation omitted). Thus, even if the <u>Schefke</u> court did not decide the case on that basis, the <u>Lales</u> court left open the possibility of liability of owners under §§ 378-2(1)(A) and 378-2(2).

The Court finds that, contrary to Chopivsky's initial position, <u>Lales</u> does not foreclose individual **owner** liability under Chapter 378 and, in fact, recognizes it as distinguishable from individual **employee** liability. But, he is correct that <u>Lales</u> does not address individual liability of LLC members.

As Chopivsky argues, and the Court recognizes, an LLC's members are distinct from the LLC itself. [Reply at 4-5 (citing H.R.S. §§ 428-201, 428-202).] Further, Hawai`i law recognizes that, "[a] member or manager shall not be personally liable for any debt, obligation, or **liability** of the company solely by reason of being or acting as a member or a manager." Haw. Rev. Stat. § 428-303 (emphasis added). It would be contrary to the statutory scheme to allow individual liability of all members for an LLC's discriminatory or retaliatory acts. <u>See, e.g.</u>, <u>Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.</u>, 91 Hawai`i 224, 240, 982 P.2d 853, 869 (1999) ("It is well settled that establishing a corporation to limit personal liability is proper

13

and is, alone, an insufficient basis for the application of the doctrines of alter ego or piercing the corporate veil." (citations omitted)), *superseded by statute on other grounds by* Haw. Rev. Stat. § 480-2; Suzuki v. Castle & Cooke Resorts, 124 Hawai`i 230, 233, 239 P.3d 1280, 1283 (Ct. App. 2010) ("Hawai`i courts are generally reluctant to disregard the corporate entity." (citation omitted)).

However, Hawai`i courts recognize an exception to complete insulation of LLC members from liability, "'where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim.'" Simental v. Simental, No. CAAP-12-0000656, 2014 WL 3796666, at *7 (Hawai`i Ct. App. July 31, 2014) (quoting Chung v. Animal Clinic, Inc., 63 Haw. 642, 645, 636 P.2d 721, 723 (1981)). Thus, under this theory, if Plaintiff could show that Chopivsky was the alter ego of HBH, she may possibly have a cognizable claim against Chopivsky as an "employer" under Chapter 378.[1]

---

[1] The parties have not presented any cases where Hawai`i courts have considered the alter ego theory in the employment discrimination and retaliation context, and this Court is not aware of any. Although the Ninth Circuit recognizes that a parent corporation can be liable for the Title VII violations of its subsidiaries, see Ass'n of Mexican-Am. Educators v. Cal., 231 F.3d 572, 582 (9th Cir. 2000), it has not directly ruled on the individual alter ego theory. See Jacobs v. R & B Sunrise, Say You Say Me, Inc., No. CV-08-104-S-BLW, 2008 WL 4630836, at *3 (D. Idaho Oct. 17, 2008) ("The Ninth Circuit has not directly
(continued...)

The Hawai`i Supreme Court has explained:

> Before a corporation's acts and obligations can be
> legally recognized as those of a particular
> person, and vice versa, it must be made to appear
> that [1] the corporation is not only influenced
> and governed by that person, but that there is
> such a unity of interest . . . that the
> individuality, or separateness, of such person and
> corporation has ceased, and [2] that the facts are
> such that an adherence to the fiction of the
> separate existence of the corporation would, under
> the particular circumstances, sanction a fraud or
> promote injustice.

Robert's, 91 Hawai`i at 242, 982 P.2d at 871 (brackets in

Robert's) (citation and internal quotation marks omitted).

Further, it has recognized factors to weigh in determining

whether a "corporate entity is the alter ego of another":

> [1] Commingling of funds and other assets, failure
> to segregate funds of the separate entities, and
> the unauthorized diversion of corporate funds or
> assets to other than corporate uses; [2] the
> treatment by an individual of the assets of the
> corporation as his own; [3] the failure to obtain
> authority to issue stock or to subscribe to or
> issue the same; [4] the holding out by an

---

¹(...continued)
addressed the alter ego theory."). The two federal appeals
courts that have considered the theory in the Title VII context
have rejected it. See Dearth v. Collins, 441 F.3d 931, 934 (11th
Cir. 2006) (holding that "the alter ego doctrine does not create
an exception to the rule against individual employee liability in
Title VII cases"); Worth v. Tyer, 276 F.3d 249, 262 (7th Cir.
2001) ("Our rejection of the 'alter ego' theory is further
supported by Congress' aversion to individual liability under
Title VII." (citation omitted)); see also Jacobs, 2008 WL
4630836, at *4 ("This Court concludes that the Ninth Circuit
would not recognize the alter ego theory of Title VII
liability."). The Court thus expresses doubt as to whether the
Hawai`i Supreme Court would recognize the alter ego theory in a
Chapter 378 case.

individual that he is personally liable for the debts of the corporation; [5] the identical equitable ownership in the two entities; [6] the identification of the equitable owners thereof with the domination and control of the two entities; [7] identi[ty] of . . . directors and officers of the two entities in the responsible supervision and management; [8] sole ownership of all of the stock in a corporation by one individual or the members of a family; [9] the use of the same office or business location; [10] the employment of the same employees and/or attorney; [11] the failure to adequately capitalize a corporation; [12] the total absence of corporate assets, and undercapitalization; [13] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; [14] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities; [15] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; [16] the use of the corporate entity to procure labor, services or merchandise for another person or entity; [17] the diversion stockholder [sic] or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; [18] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; and [19] the formation and use of a corporation to transfer to it the existing liability of another person or entity.

Id. (brackets and alterations in Robert's) (citation and internal quotation marks omitted).  Additional factors are:

(1) incorporation for the purpose of circumventing public policy or statutes; (2) whether the parent finances the subsidiary; (3) whether the subsidiary has no business or assets except those conveyed to it by the parent; (4) whether the

16

parent uses the subsidiary's property as its own;
(5) whether the directors of the subsidiary do not
act independently in the interest of the
corporation but take their orders from and serve
the parent; and (6) whether the fiction of
corporate entity . . . has been adopted or used to
evade the provisions of a statute.

Id. (alteration in Robert's) (citation and internal quotation

marks omitted).

Even viewed in the light most favorable to her,

Plaintiff has not pled any facts that tend to show she could meet

either the general alter ego standards of "unity of interest" or

"fraud," or any of the specific factors from Robert's.  See

Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005) ("When

ruling on a motion to dismiss, we accept all factual allegations

in the complaint as true and construe the pleadings in the light

most favorable to the nonmoving party.").  The most detail that

Plaintiff provides is that Chopivsky was "the majority owner and

current Chief Executive Officer and President of Defendant HBH,"

[Complaint at ¶ 9,] and that he was involved in some decisions

and supervision regarding Plaintiff, see, e.g., id. at ¶¶ 11, 41,

52.  These facts alone are insufficient to state an alter ego

claim, and the Court therefore GRANTS the Motion as to Counts II

and IV and DISMISSES them as to Chopivsky WITHOUT PREJUDICE.  See

Harris, 573 F.3d at 737.[2]

_____

[2] In her Opposition, Plaintiff also argues that she states a
claim against Chopivsky as an aider and abettor pursuant to Haw.
(continued...)

17

## III. **Count V**

Plaintiff brings Count V, for retaliation against a whistleblower in violation of the Hawai`i Whistleblower Protection Act ("HWPA"). Haw. Rev. Stat. § 378-62 provides in full:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> > (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
> >
> > > (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or

---

[2](...continued)
Rev. Stat. § 378-2(3). [Mem. in Opp. at 11-12.] The Court rejects this change in position, and FINDS that Plaintiff has not described how Chopivsky aided, abetted, incited, compelled, or coerced discrimination by HBH or other employees sufficient to state a plausible claim under § 378-2(3). Further, Chopivsky is correct that it is legally untenable for Plaintiff to claim that Chopivsky aided and abetted himself. See, e.g., Park v. Oahu Transit Servs., Inc., CV NO 10-00445-DAE, 2011 WL 3490190, at *8 (D. Hawai`i Aug. 10, 2011) ("the Individual Defendants may not be held liable under § 378-2(3) for any discriminatory behavior they may have conducted themselves, because they cannot be liable for aiding and abetting [themselves]") (alteration in Park) (citation and internal quotation marks omitted)). Even if she is granted leave to amend and pleads a claim under this subsection, she can only state a claim for acts to which Chopivsky aided and abetted others.

> > (B) A contract executed by the State, a
> > political subdivision of the State, or
> > the United States, unless the employee
> > knows that the report is false; or
> >
> > (2) An employee is requested by a public body
> > to participate in an investigation, hearing,
> > or inquiry held by that public body, or a
> > court action.

Similar to Haw. Rev. Stat. § 378-1, Haw. Rev. Stat. § 378-61

defines "employer" as "a person who has one or more employees.

Employer includes an agent of an employer or of the State or a

political subdivision of the State." Also, the statute defines

"person" as "an individual, sole proprietorship, partnership,

corporation, association, or any other legal entity." Id.

Also, similar to § 378-2(1)(A) and -2(2), no Hawai`i

court has addressed the narrow issue of whether a member of an

LLC can be sued in his individual capacity under the HWPA.

However, this district court has adopted the reasoning of Lales

in rejecting HWPA claims against individual employees. See

Onodera v. Kuhio Motors Inc., Civil No. 13-00044 DKW-RLP, 2014 WL

1031039, at *7-8 (D. Hawai`i Mar. 13, 2014) ("Accordingly, in

light of Lales, and the extension of its application to the HWPA,

the Court dismisses Count V as against Defendants Rivera and

Mackey individually."). This district court based the extension

of the reasoning in Lales, regarding Chapter 378, to the HWPA

based on the similarities in the legislative histories and the

definitions of "employer." Id. (quoting Lum v. Kauai County

<u>Council</u>, 2007 WL 3408003, at *20–21 (D. Haw. Nov. 9, 2007)).

Although Hawai`i courts have not ruled on the issue yet, this Court finds the reasoning in <u>Onodera</u> persuasive. Thus, the only way that Plaintiff can prevail on this claim against Chopivsky is by proving HBH is his alter ego. For the same reasons as above, <u>see</u> *supra* Section II, the Court GRANTS the Motion as to the HWPA claim and DISMISSES Count V as to Chopivsky WITHOUT PREJUDICE.

## IV. **Count IX**

Chopivsky argues that Plaintiff's <u>Parnar</u> Claim for constructive discharge fails because: it is time-barred; Chopivksy was not Plaintiff's employer; and the claim does not fit within the narrow class of cases where <u>Parnar</u> applies because the claim is already covered by Title VII and Chapter 378.

In <u>Parnar v. Americana Hotels, Inc.</u>, 65 Haw. 370, 652 P.2d 625 (1982), the Hawai`i Supreme Court adopted a common law tort, whereby an individual may bring a claim against an employer if her discharge directly violates clear public policy. The court explained,

> Because the courts are a proper forum for modification of the judicially created at-will doctrine, it is appropriate that we correct inequities resulting from harsh application of the doctrine by recognizing its inapplicability in a narrow class of cases. The public policy exception discussed herein represents wise and progressive social policy which both addresses the need for greater job security and preserves to the employer sufficient latitude to maintain

profitable and efficient business operations.  We
therefore hold that an employer may be held liable
in tort where his discharge of an employee
violates a clear mandate of public policy.  In
determining whether a clear mandate of public
policy is violated, courts should inquire whether
the employer's conduct contravenes the letter or
purpose of a constitutional, statutory, or
regulatory provision or scheme.  Prior judicial
decisions may also establish the relevant public
policy.  However, courts should proceed cautiously
if called upon to declare public policy absent
some prior legislative or judicial expression on
the subject.  Of course, the plaintiff alleging a
retaliatory discharge bears the burden of proving
that the discharge violates a clear mandate of
public policy.

Id. at 379-80, 652 P.2d at 631 (footnotes omitted).  "Parnar

claims can only be maintained in a 'narrow class of cases' where

the judicially created wrongful discharge action is needed to

effectuate the public policy at stake."  Cambron v. Starwood

Vacation Ownership, Inc., 945 F. Supp. 2d 1133, 1141-42 (D.

Hawai`i 2013) (citing Ross v. Stouffer Hotel Co., 76 Hawai`i 454,

879 P.2d 1037, 1047 (1994)).

Plaintiff concedes that, as with all actions for damage

to persons or property, see Haw. Rev. Stat. § 657-7, a two-year

statute of limitations applies to her Parnar Claim.  See Mem. in

Opp. at 21-22; see also Maluo v. Nakano, 125 F. Supp. 2d 1224,

1236 (D. Hawai`i 2000) ("Because a constructive discharge claim

is one form of employment discrimination claim, the Court applies

the two year statute of limitations to Plaintiff's claim."

(citation omitted)).  Neither party offers a Hawai`i case

addressing when the statute of limitations begins to run on a

Parnar claim.  However, federal law addressing constructive

discharge claims in the Title VII context is clear: "in

constructive discharge cases periods of limitation begin to run

on the date of the resignation."  Draper v. Coeur Rochester,

Inc., 147 F.3d 1104, 1111 (9th Cir. 1998); Maluo, 125 F. Supp. 2d

at 1235 ("a constructive discharge claim . . . aris[es] when 'the

individual has simply had enough; she can't take it anymore.'"

(quoting Draper, 147 F.3d at 1110)); cf. Del. State Coll. v.

Ricks, 449 U.S. 250, 257 (1980) ("Mere continuity of employment,

without more, is insufficient to prolong the life of a cause of

action for employment discrimination." (citation omitted)).

Plaintiff alleges that she was constructively

discharged on February 10, 2012.  [Complaint at ¶ 81 ("Plaintiff,

on the evening of February 10, 2012, tendered her resignation to

Defendants and was constructively discharged.").]  Applying the

two-year statute of limitations, the last day Plaintiff could

bring a valid claim for constructive discharge was February 10,

2014.  She did not file the Complaint until March 28, 2014.

Therefore, Plaintiff's Parnar Claim is time-barred.  The Court

therefore GRANTS the Motion as to Plaintiff's Parnar Claim and

DISMISSES Count IX WITH PREJUDICE against Chopivsky.

Even if the Court found that it was not time-barred,

Count IX fails to state a claim because Plaintiff has not

sufficiently pled that Chopivsky was her employer.  In _Parnar_,
the Hawai`i Supreme Court expressly limited the claim to
employers:  "We therefore hold that an **employer** may be held
liable in tort where his discharge of an employee violates a
clear mandate of public policy."  65 Haw. at 380, 652 P.2d at 631
(emphasis added).  As with the Chapter 378 and HWPA claims,
Plaintiff has not pled facts sufficient to show that Chopivsky
was her employer.  _See_ _supra_ Sections II-III.

Further, even if Count IX were timely and stated a
claim against Chopivsky as her employer, the Court questions
whether Plaintiff's _Parnar_ Claim is "needed to effectuate the
public policy at stake."  _See_ _Cambron_, 945 F. Supp. 2d at 1142.
Courts generally dismiss _Parnar_ Claims where the plaintiff also
has the recourse of Title VII and Chapter 378.  _See, e.g._,
_Patrick_, 2014 WL 1094917, at *12 ("Plaintiff cannot state a claim
for wrongful termination in violation of public policy [under
_Parnar_] based on the same conduct as his Title VII and HRS § 378
claims because these statutes already provide a sufficient
remedy." (alteration in _Patrick_) (quoting _Hughes v. Mayoral_, 721
F. Supp. 2d. 947, 962 (D. Haw. 2010))); _Ross_, 76 Hawai`i at 464,
879 P.2d at 1047 ("By making the discharge of an employee
'because of . . . [his or her] marital status' unlawful, HRS
§ 378-2(1), and providing a remedial scheme for that
discriminatory employment practice, the legislature itself has

provided the means for enforcing the public policy that Ross

seeks to vindicate through his <u>Parnar</u> claim." (alterations in

<u>Ross</u>)).

Plaintiff argues that "Defendant Chopivsky's

constructive discharge of Plaintiff's employment violated clearly

established public policies established by Hawaii's foster care

programs and the obvious public policy against endangerment by

State contractors hired to protect the very children they are

endangering." [Mem. in Opp. at 20.] While the Court recognizes

that the safety and welfare of Hawaii's foster children is of the

utmost importance, the Court is not persuaded that the general

policies, as described by Plaintiff, fit her <u>Parnar</u> Claim into

the "narrow class of cases" recognized in <u>Parnar</u>. <u>See</u> <u>Parnar</u>, 65

Haw. at 379, 652 P.2d at 631. First, Plaintiff does not cite to

"a constitutional, statutory, or regulatory provision or scheme"

that creates a clear mandate that Defendants have violated. <u>See</u>

<u>id.</u> at 380, 652 P.2d at 631. Second, even if there were a clear

mandate, this policy could be vindicated by Plaintiff's other

retaliation claims. In <u>Lales</u>, the Hawai`i Supreme Court upheld

the vacatur of summary judgment for JN as to Lales's <u>Parnar</u> claim

because it was not clear whether there were still disputed issues

of fact as to that claim. <u>Lales</u>, 133 Hawai`i at 363, 328 P.3d at

372. But the court limited its conclusion: "[S]hould the circuit

court determine on remand that the public policy claim is indeed

24

derived from HRS chapter 378, such a claim would be barred."  Id.
From the Complaint in the instant case, it appears that the
Parnar Claim is "derived from" the other retaliation claims.
Thus, even if it were not time barred and properly pled against
Chopivsky as Plaintiff's employer, Count IX would not state a
claim under Parnar.

**V.    Summary**

        The Court therefore GRANTS the Motion in its entirety.
It DISMISSES WITH PREJUDICE as to Chopivsky: Counts I and III for
discrimination and retaliation pursuant to Title VII; and
Count IX for constructive discharge against public policy.  It
DISMISSES WITHOUT PREJUDICE as to Chopivsky: Counts II and IV for
discrimination and retaliation pursuant to Chapter 378; Count V
for retaliation against a whistleblower; Count VI for failure to
pay wages under Haw. Rev. Stat. Chapter 388; and Count VII for
wrongful termination/constructive discharge.

        To the extent that Plaintiff desires to add new claims
to the Complaint, she has until **December 19, 2014** to move the
Court to do so.  To the extent that she wants to amend the
Complaint to modify the claims that have been dismissed without
prejudice herein, she will have the opportunity to do so.  The
Court will issue that deadline when it rules on HBH's Amended
Motion for Partial Dismissal of Complaint Filed on March 28,
2014, [dkt. no. 25,] which is set for hearing on October 6, 2014

at 9:45 a.m. [dkt. no. 31].

**CONCLUSION**

On the basis of the foregoing, Chopivsky's "Motion for Partial Dismissal of Complaint Filed on March 28, 2014", filed April 29, 2014, is HEREBY GRANTED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 18, 2014.



    /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RAELYNN J. HILLHOUSE VS. HAWAII BEHAVORIAL HEALTH, ET AL; CIVIL 14-00155 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CHOPIVSKY'S MOTION FOR PARTIAL DISMISSAL OF COMPLAINT FILED ON MARCH 28, 2014**