IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RAELYNN J. HILLHOUSE,              )       CIVIL 14-00155 LEK-BMK
                                   )
          Plaintiff,               )
                                   )
     vs.                           )
                                   )
HAWAII BEHAVORIAL HEALTH,          )
LLC; GEORGE CHOPIVSKY, JR. in      )
his individual capacity,           )
                                   )
          Defendants.              )
_____

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF SECOND
AMENDED COMPLAINT FILED ON FEBRUARY 25, 2015

        Before the Court is Defendants Hawaii Behavioral, LLC

("HBH") and George Chopivsky, Jr.'s ("Chopivsky," collectively

"Defendants") Motion for Partial Dismissal of Second Amended

Complaint Filed on February 25, 2015 ("Motion"), filed on

March 11, 2015. [Dkt. no. 72.] Plaintiff Raelynn J. Hillhouse

("Plaintiff") filed her memorandum in opposition on April 13,

2015, and Defendants filed their reply on April 20, 2015. [Dkt.

nos. 76, 77.] This matter came on for hearing on May 4, 2015.

After careful consideration of the Motion, supporting and

opposing memoranda, and the arguments of counsel, Defendants'

Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the

reasons set forth below.

<u>**BACKGROUND**</u>

The relevant factual and procedural background of this case is set forth in this Court's: (1) September 18, 2014 Order Granting in Part and Denying in Part Defendant Chopivsky's Motion for Partial Dismissal of Complaint Filed on March 28, 2014 ("9/18/14 Order"); and (2) October 31, 2014 Order Granting in Part and Denying in Part Defendant Hawaii Behavioral Health, LLC's Amended Motion for Partial Dismissal of Complaint Filed on March 28, 2014 ("10/31/14 Order"). [Dkt. nos. 42, 45.[1]] The Court will only repeat the background that is relevant to the instant Motion.

Plaintiff filed her complaint, on March 28, 2014, against her former employer, HBH, and its majority owner, Chopivsky (in his individual capacity), asserting federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-1, *et seq*., and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The lawsuit focuses on a series of allegedly discriminatory and retaliatory actions, based on Plaintiff's gender and sexual orientation, beginning in July 2011, that culminated in her

---

[1] The 9/18/14 Order is also available at 2014 WL 4662378, and the 10/31/14 Order is available at 2014 WL 5528239. The 9/18/14 Order addressed Chopivsky's Motion for Partial Dismissal of Complaint Filed March 28, 2014 ("Chopivsky Motion"), filed April 29, 2014, and the 10/31/14 Order addressed HBH's Amended Motion for Partial Dismissal of Complaint Filed on March 28, 2014 ("HBH Motion"), filed June 30, 2014. [Dkt. nos. 16, 25.]

resignation from HBH in May 2012.  Specifically, Plaintiff alleges that former President of HBH and friend of Chopivsky, Alexander J. Hoinsky ("Hoinsky"), sexually harassed her and, after she complained, Chopivsky and HBH retaliated against her.

In the 9/18/14 Order, this Court, *inter alia*, dismissed Plaintiff's claims against Chopivsky for discrimination and retaliation pursuant to Haw. Rev. Stat. § 378-2, and retaliation against a whistleblower pursuant to the Hawai`i Whistleblower Protection Act ("HWPA"), Haw. Rev. Stat. § 378-62. 2014 WL 4662378, at *7-8.  It reasoned, however, that while the recent Hawai`i Supreme Court case of <u>Lales v. Wholesale Motors Co.</u>, 133 Hawai`i 332, 328 P.3d 341 (2014), foreclosed individual liability under § 378-2 against co-employees and supervisors, that case, <u>Sam Teague, Ltd. v. Hawai'i Civil Rights Commission</u>, 89 Hawai`i 269, 276, 971 P.2d 1104, 1111 (1999), and <u>Schefke v. Reliable Collection Agency, Ltd.</u>, 96 Hawai`i 408, 32 P.3d 52 (2001), did not foreclose individual liability against a majority member of a limited liability corporation ("LLC") under an alter ego theory.  2014 WL 4662378, at *4-7.  The Court, thus, dismissed those claims without prejudice, and suggested that Plaintiff could conceivably plead an alter ego claim, following the standard and factors as laid out in <u>Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Co.</u>, 91 Hawai`i 224, 982 P.2d 853 (1999).  <u>Id.</u> at *6-7.

3

Further, the Court found this district court's
decision, <u>Onodera v. Kuhio Motors Inc.</u>, Civil No. 13-00044 DKW-
RLP, 2014 WL 1031039 (D. Hawai`i Mar. 13, 2014), extending the
logic of <u>Lales</u> to the HWPA, persuasive and therefore dismissed
that claim without prejudice, again permitting amendment under
the alter ego theory.  <u>Id.</u> at *8.  Last, in a footnote, this
Court rejected Plaintiff's attempt to use her memorandum in
opposition to refashion her § 378-2 claim as an aider and abettor
claim, which would permit individual liability.  The Court
suggested that, even if she was granted leave to amend the claim,
Chopivsky could only be found liable for acts to which he "aided
and abetted others."  <u>Id.</u> at *7 n.2.

Also significant for this Motion, in the 10/31/14
Order, the Court, *inter alia*, dismissed without prejudice
Plaintiff's defamation claim against HBH, reasoning that it was
preempted by the Hawai`i workers' compensation law.  2014 WL
5528239, at *7-8.  All of the defamatory actions alleged occurred
before May 2012 and were preempted.[2]  <u>Id.</u> at *8.

On February 25, 2015, Plaintiff filed her Second
Amended Complaint (Corrected) ("Second Amended Complaint"),[3] in

---

[2] The Court denied the HBH Motion insofar as it found that
Plaintiff's invasion of privacy claim fell within an exception to
the workers' compensation law.  10/31/14 Order, 2014 WL 5528239,
at *8.

[3] Plaintiff filed her First Amended Complaint on November
(continued...)

4

which she brought, *inter alia*, the following claims: unlawful
retaliation, pursuant to § 378-2(a)(2), against Chopivsky as the
alter ego of HBH ("Count IV"); unlawful retaliation, pursuant to
§ 378-2(a)(3), against Chopivsky as an aider and abettor
("Count V"); retaliation against a whistleblower, pursuant to the
HWPA, against Chopivsky as the alter ego of HBH ("Count VII");
defamation against HBH and Chopivsky ("Count X"); and invasion of
privacy against HBH and Chopivsky ("Count XII").[4] [Dkt. no. 68
(Second Amended Complaint) at ¶¶ 134-48, 155-60, 170-75, 185-90.]
Plaintiff seeks the following relief: general and/or compensatory
damages; special damages; punitive and/or liquidated or exemplary
damages; attorneys' fees and costs; other legal and equitable
relief available under the state and federal statutes; and any

---

[3](...continued)
19, 2014, but subsequently filed her Motion for Leave to File
Second Amended Complaint on December 19, 2014. [Dkt. nos. 46,
51.] The magistrate judge granted that motion on February 23,
2015. [Dkt. no. 64.]

[4] The other claims in the Second Amended Complaint are:
unlawful discrimination, pursuant to Title VII, against HBH
("Count I"); unlawful retaliation, pursuant to Title VII, against
HBH ("Count II"); unlawful retaliation, pursuant to § 378-
2(a)(2), against HBH ("Count III"); retaliation against a
whistleblower, pursuant to HWPA, against HBH ("Count VI");
failure to make payment of wages, pursuant to Haw. Rev. Stat.
Chapter 388, against HBH ("Count VIII"); intentional infliction
of emotional distress, against HBH and Chopivsky ("Count IX");
interference with prospective economic advantage, against HBH and
Chopivsky ("Count XI"); and breach of contract for unpaid accrued
vacation and bonuses, pursuant to <u>Kinoshita v. Canadian Pacific
Airlines, Ltd</u>, 68 Haw. 594, 724 P.2d 110 (1986), against HBH and
Chopivsky ("Count XIII"). [Dkt. no. 68 at ¶¶ 114-33, 149-54,
161-69, 176-84, 191-97.]

other appropriate relief.  [Id. at pgs. 60-61.]

Defendants move to dismiss all of these claims with prejudice, arguing that, even after amendment, they fail to state claims upon which relief can be granted.  [Mem. in Supp. of Motion at 2-3.]

**DISCUSSION**

I.  **Alter Ego Claims (Counts IV and VII)**

Defendants argue that Plaintiff's alter ego claims should be dismissed because alter ego liability is not cognizable under § 378-2 and the HWPA.[5]  [Id. at 6-9, 14; Reply at 1-5, 9.]

---

[5] Section 378-2 provides, in pertinent part:

> (a) It shall be an unlawful discriminatory practice:
>
> . . .
>
> (2) For any employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part[.]

The HWPA provides, in pertinent part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about
>
> (continued...)

6

Plaintiff responds that Hawai`i law actually supports alter ego liability in this context and, following the Court's guidance in the 9/18/14 Order, she has sufficiently alleged such a claim. [Mem. in Opp. at 6-14, 16-17.]

In the 9/18/14 Order, this Court concluded that:

- "<u>Lales</u> does not foreclose individual **owner** liability under Chapter 378 and, in fact, recognizes it as distinguishable from individual **employee** liability[;]" 2014 WL 4662378, at *5 (emphasis in 9/18/14 Order);

- "Hawai`i law recognizes that, '[a] member or manager shall not be personally liable for any debt, obligation, or **liability** of the company solely by reason of being or acting as a member or a manager[,]'" <u>id.</u> at *6 (emphasis in 9/18/14 Order) (quoting Haw. Rev. Stat. § 428-303), but that "Hawai`i courts recognize an exception to complete insulation of LLC members from liability, 'where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim[;]'" <u>id.</u> (some citations and internal quotation marks omitted) (quoting <u>Simental v. Simental</u>, No. CAAP-12-0000656, 2014 WL 3796666, at *7 (Hawai`i Ct. App. July 31, 2014)); and

_____

[5](...continued)
to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

(A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or

(B) A contract executed by the State, a political subdivision of the State, or the United States[.]

Haw. Rev. Stat. § 378-62.

- "under this theory, if Plaintiff could show that Chopivsky was the alter ego of HBH, she may possibly have a cognizable claim against Chopivsky as an 'employer' under Chapter 378[,]" id. (footnote omitted).

Although it acknowledged that it was aware of no Hawai`i or Ninth Circuit case law dealing with the specific issue before it, and that two federal circuit courts have found no individual liability in the analogous Title VII context, this Court dismissed the § 378-2 claims without prejudice. Id. at *7 & n.1. It concluded that, "[e]ven viewed in the light most favorable to her, Plaintiff has not pled any facts that tend to show she could meet either the general alter ego standards of 'unity of interest' or 'fraud,' or any of the specific factors from Robert's." Id. at *7 (citing Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005)).

In their memoranda, the parties do not offer further binding or persuasive law to inform the Court as to whether the Hawai`i Supreme Court would recognize an alter ego exception to the general LLC limit on liability in the § 378-2 context.[6] The

_____

[6] The Court agrees with Defendants that the Hawai`i Civil Rights Commission's ("HCRC") Final Decision and Order in Hoshijo & Bate v. Research Institute for Hawaii, USA, HCRC Docket No. 13-001-E-RH-SH-R (Aug. 26, 2014) ("Hoshijo Order") (attached to Pltf.'s Mem. in Opp., Decl. of Anthony "T.J." Quan, as Exh. 1) has no binding effect on this Court, in particular, because the issue of whether to permit alter ego liability is outside the HCRC's "'delegated realm of expertise.'"  See Reply at 3 (quoting Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai`i 412, 418, 91 P.3d 494, 500 (2004)).  Further, from the Hoshijo Order, it does not appear that the existence of alter ego theory under Hawai`i
(continued...)

Court thus takes the same position as it did in the 9/18/14
Order.  That is, although it could predict whether the Hawai`i
Supreme Court would permit alter ego liability in the § 378-2
context, it need not do so.  It finds that, even if an alter ego
claim is cognizable, Plaintiff still fails to allege sufficient
facts to state an alter ego claim in this case.

As described in the 9/18/14 Order, Robert's sets forth
the legal standard and factors for proving alter ego liability
and determining whether a court should pierce the corporate veil.
Robert's holds:

> Generally speaking, a corporation will be
> deemed the alter ego of another "where **recognition
> of the corporate fiction would bring about
> injustice** and inequity **or** when there is evidence
> that **the corporate fiction has been used to
> perpetrate a fraud** or defeat a rightful claim."
> Chung v. Animal Clinic, Inc., 63 Haw. 642, 645,
> 636 P.2d 721, 723 (1981); see also Kahili, Inc. v.
> Yamamoto, 54 Haw. 267, 271-72, 506 P.2d 9, 11-12
> (1973).

> Before a corporation's acts and
> obligations can be legally recognized as
> those of a particular person, and vice versa,
> it must be made to appear that [1] the
> corporation is not only influenced and
> governed by that person, but that there is
> such a unity of interest . . . that the

    [6](...continued)
law was contested and, thus, even if it was persuasive, the issue
was not clearly decided.  See Hoshijo Order at 2-3.  Finally,
Hoshijo is distinguishable, insofar as the individual's unity of
interest with the corporation was much clearer, and recognition
of the corporate fiction would have been unjust since the HCRC
found the corporate defendant to be "judgment proof."  See id. at
55-57.

individuality, or separateness, of such
person and corporation has ceased, and [2]
that the facts are such that an adherence to
the fiction of the separate existence of the
corporation would, under the particular
circumstances, sanction a fraud or promote
injustice.

Associated Vendors, Inc. v. Oakland Meat Co.,
Inc., 210 Cal. App. 2d 825, 26 Cal. Rptr. 806, 813
(1962) (citations and internal quotation marks
omitted).  In Oakland Meat Co., 26 Cal. Rptr. at
813–15, the California Court of Appeals catalogued
factors that many courts have weighed in
determining whether a corporate entity is the
alter ego of another.  These include:

[1] Commingling of funds and other assets,
failure to segregate funds of the separate
entities, and the unauthorized diversion of
corporate funds or assets to other than
corporate uses; [2] the treatment by an
individual of the assets of the corporation
as his own; [3] the failure to obtain
authority to issue stock or to subscribe to
or issue the same; [4] the holding out by an
individual that he is personally liable for
the debts of the corporation; [5] the
identical equitable ownership in the two
entities; [6] the identification of the
equitable owners thereof with the domination
and control of the two entities; [7]
identi[ty] of . . . directors and officers of
the two entities in the responsible
supervision and management; [8] sole
ownership of all of the stock in a
corporation by one individual or the members
of a family; [9] the use of the same office
or business location; [10] the employment of
the same employees and/or attorney; [11] the
failure to adequately capitalize a
corporation; [12] the total absence of
corporate assets, and undercapitalization;
[13] the use of a corporation as a mere
shell, instrumentality or conduit for a
single venture or the business of an
individual or another corporation; [14] the
concealment and misrepresentation of the

identity of the responsible ownership,
management and financial interest, or
concealment of personal business activities;
[15] the disregard of legal formalities and
the failure to maintain arm's length
relationships among related entities;
[16] the use of the corporate entity to
procure labor, services or merchandise for
another person or entity; [17] the diversion
stockholder [sic] or other person or entity,
to the detriment of creditors, or the
manipulation of assets and liabilities
between entities so as to concentrate the
assets in one and the liabilities in another;
[18] the contracting with another with intent
to avoid performance by use of a corporate
entity as a shield against personal
liability, or the use of a corporation as a
subterfuge of illegal transactions; and [19]
the formation and use of a corporation to
transfer to it the existing liability of
another person or entity.

Id. (internal citations omitted) (brackets and
emphases added).

This list, however, is not exhaustive. For
example, other courts have looked at:
(1) incorporation for the purpose of circumventing
public policy or statutes; (2) whether the parent
finances the subsidiary; (3) whether the
subsidiary has no business or assets except those
conveyed to it by the parent; (4) whether the
parent uses the subsidiary's property as its own;
(5) whether the directors of the subsidiary do not
act independently in the interest of the
corporation but take their orders from and serve
the parent; and (6) whether the "fiction of
corporate entity . . . has been adopted or used to
evade the provisions of a statute." Kavanaugh v.
Ford Motor Co., 353 F.2d 710, 717 (7th Cir. 1965).
Ultimately, no one factor is dispositive.

Robert's, 91 Hawai`i at 241-43, 982 P.2d at 870-72 (some

alterations in Robert's) (some citations and footnotes omitted).

11

In the original complaint, Plaintiff simply alleged
that Chopivsky was the "majority owner and current Chief
Executive Officer and President of Defendant HBH." [Complaint at
¶ 9.]  In the Second Amended Complaint, Plaintiff alleges that
Chopivsky:

> is the 85% majority share-holder and current Chief
> Executive Officer and President of Defendant HBH
> who governs and influences HBH such that Defendant
> Chopivsky and HBH have such a unity of interest
> that the individuality and separateness of
> Defendant Chopivsky and HBH never existed or has
> ceased and the facts are such that adherence to
> HBH's fiction of corporate separateness would
> sanction a fraud and promote injustice.

[Second Amended Complaint at ¶ 9.]  Further, the Second Amended
Complaint alleges that Chopvisky, for example: drew sums for
personal use from HBH's line of credit; shifted funds from HBH to
his other companies; allowed his son, when he was not on HBH
payroll, to draw funds from an HBH line of credit; and placed
certain limits on HBH's Board of Managers.  [Id. at ¶¶ 43-56.]

The Court recognizes that Plaintiff has alleged various
facts, which if shown to be true, would show some unity of
interest between Chopivsky and HBH.  However, even if they were
true, Plaintiff has not alleged any facts addressing the second
prong of the test, that "adherence to the fiction of the separate
existence of the corporation would, under the particular
circumstances, sanction a fraud or promote injustice."  See
Robert's, 91 Hawai`i at 242, 982 P.2d at 871.  Put differently,

there are no allegations which demonstrate that, if this Court grants the Motion as to Plaintiff's alter ego claims it would work an injustice on Plaintiff.

Specifically, Plaintiff does not allege that HBH is insolvent, and these very same claims under § 378-2 and the HWPA remain against HBH, as well as additional Title VII claims. <u>See</u> Counts I-III. It was for this reason that the Hawai`i Supreme Court in <u>Robert's</u> ultimately chose not to pierce the corporate veil, even though it found a unity of interest among some of the shell corporations who were defendants in that case. <u>See</u> <u>id.</u> at 246, 982 P.2d at 875 ("Although we acknowledge that it is the 'factual' recognition of the scheme that is necessary to the survival of appellants' claims, such claims survive without this court unnecessarily 'piercing the corporate veil.'"); <u>see also</u> <u>The Club at Hokuli`a, Inc. v. Am. Motorists Ins. Co.</u>, Civil No. 10-00241 JMS-LEK, 2010 WL 3465278, at *13 (D. Hawai`i Sept. 3, 2010) (finding it unnecessary to pierce the corporate veil as to Oceanside because "AMIC has not proven that recognizing the Club, HCA, and Oceanside as distinct entities would cause injustice and inequity or that those entities used the corporate fiction to perpetrate a fraud or defeat a rightful claim" and because "Plaintiffs have distinct and actionable claims against

Oceanside").[7]

This Court is also mindful that, "Hawai`i courts have been reluctant to disregard the corporate entity." <u>Robert's</u>, 91 Hawai`i at 241 n.12, 982 P.2d at 870 n.12 (citations omitted); <u>see also, e.g.</u>, <u>Adwalls Media, LLC v. Adwalls, LLC</u>, Civil No. 12-00614 SOM/BMK, 2013 WL 4482501, at *4 (D. Hawai`i Aug. 20, 2013) (reasoning that "the standard for piercing the veil of an LLC is at least as stringent as that for piercing the veil of a corporation," and dismissing alter ego claim in part because "Hawaii courts are reluctant to disregard the corporate entity" (citations omitted)). Therefore, even if the Court was to find that alter ego liability existed under § 378-2, and Plaintiff had sufficiently pled unity of interest, its failure to allege fraud or injustice, and Hawaii courts' reluctance to use alter ego liability weigh against Plaintiff's Count IV position.

The same logic applies with equal force to Count VII pursuant to the HWPA. Since Plaintiff's Count VI remains against HBH for retaliation against a whistleblower, there is no reason for this Court to disregard the corporate form as to this claim. The Court therefore GRANTS the Motion as to Counts IV and VII and DISMISSES those claims. At the hearing, Plaintiff's counsel

---

[7] This citation refers to the magistrate judge's findings and recommendation, which the district judge adopted on April 11, 2014. <u>See</u> 2010 WL 4386741, at *7 ("the court agrees that AMIC has not established that Plaintiffs are mere alter egos of Oceanside").

argued that, even if the Court dismissed the alter ego claims, Plaintiff should have a third opportunity to amend those claims. This Court finds that the claims are not salvageable. Further, the Court already provided guidance in its 9/18/14 Order, and granted leave to amend on this specific basis – as Plaintiff acknowledges. [Mem. in Opp. at 8.] The dismissal as to these two claims is therefore WITH PREJUDICE. <u>See, e.g.</u>, <u>Heilman v. Sanchez</u>, 583 F. App'x 837, 839-40 (9th Cir. 2014) (holding "the district court did not abuse its discretion by refusing to grant leave to amend because those aspects of the complaint could not be cured by amendment" (citing <u>Weilburg v. Shapiro</u>, 488 F.3d 1202, 1205 (9th Cir. 2007))).

## II.  **Aider and Abettor Claim (Count V)**

In Count V, Plaintiff alleges that Chopivsky is individually liable as an aider and abettor, because he enlisted "multiple HBH employees/contractors/managers" in a "campaign of continuing harassment, discrimination and retaliation[.]" [Second Amended Complaint at ¶ 144.] For example, she alleges that Chopivsky, Michael Lukson, Hoinsky, and Chopivsky's son, George Chopivsky, III, met to form a plan to "make the conditions of Plaintiff's employment so intolerable that Plaintiff would be forced to quit her position." [<u>Id.</u> at ¶ 92.]

Section 378-2(a)(3) provides, in pertinent part,

(a) It shall be an unlawful discriminatory
practice:

15

. . .

>(3) For any person, whether an employer,
>employee, or not, to aid, abet, incite,
>compel, or coerce the doing of any of the
>discriminatory practices forbidden by this
>part, or to attempt to do so;

Unlike § 378-2(a)(2), § 378-2(a)(3) clearly allows individual

liability.  See, e.g., Kosegarten v. Dep't of the Prosecuting

Attorney, Civil No. 10-00321 SOM-KSC, 2011 WL 6002870, at *9 (D.

Hawai`i Nov. 29, 2011); Lales, 133 Hawai`i at 345, 328 P.3d at

354.

Defendants make two largely procedural arguments as to

why Plaintiff's aider and abettor claim must fail.  First, they

argue that, in essence, Plaintiff's alter ego and aider-and-

abetting theories are mutually exclusive.  [Mem. in Supp. of

Motion at 12-14; Reply at 9.]  The Court disagrees.  There is no

reason that Plaintiff cannot plead alter ego liability but also,

alternatively, aider and abettor liability – even if the two are

inconsistent.[8]  See Fed. R. Civ. P. 8(d)(3) ("A party may state

as many separate claims or defenses as it has, regardless of

consistency."); cf. Aholelei v. Dep't of Pub. Safety, 488 F.3d

1144, 1149 (9th Cir. 2007) ("a pleading should not be construed

as an admission against another alternative or inconsistent

---

[8] The Court agrees that the two appear to be inconsistent
since this Court cannot find Chopivsky to be the company and at
the same time that he, as the company, aided and abetted his own
employees.

pleading in the same case" (citations and internal quotation
marks omitted)). While Plaintiff may not proceed to trial on
both issues, there is no reason that, at the pleading stage, she
could not pursue both theories.[9]

Second, Defendants argue that Count V was not properly
brought. The Court finds that this argument has merit. In the
original complaint, Plaintiff did not bring a claim for aiding
and abetting under § 378-2(a)(3).[10] Faced with the recently
decided <u>Lales</u>, holding that a plaintiff cannot bring a claim
against a supervisor or colleague, in her memorandum in
opposition to the Chopivsky Motion, Plaintiff argued for the
first time that Chopivsky could be held individually liable as an
aider and abettor. [Mem. in Opp. to Chopivsky Motion, filed
8/8/14 (dkt. no. 36), at 11-12.] In the 9/18/14 Order, this
Court expressly rejected this procedure. 2014 WL 4662378, at *7
n.2 ("The Court rejects this change in position."). The Court
further expressed doubt about the substance of the claim, and
reasoned that, "[e]ven **if she is granted leave to amend** and
pleads a claim under this subsection, she can only state a claim
for acts to which Chopivsky aided and abetted others." <u>Id.</u>

---

[9] However, in light of Section I, the discussion immediately
below, and the rulings in this Order, this pleading issue is
inconsequential to the outcome in this case.

[10] The Court rejects Plaintiff's post hoc arguments to the
contrary. <u>See</u> Mem. in Opp. to the Motion at 15.

(emphasis added).

Plaintiff, however, never moved the Court to add the aider and abettor claim. In the 9/18/14 Order, the Court gave Plaintiff until December 19, 2014 to move the Court to add new claims, id. at *11, and in the 10/31/14 Order, gave Plaintiff until November 19, 2014 to amend the claims dismissed without prejudice in the 9/18/14 and 10/31/14 Orders, 2014 WL 5528239, at *10. Subsequently, on November 19, 2014, Plaintiff filed her First Amended Complaint, to which she added the aider and abettor claim.[11] [Dkt. no. 46 at ¶¶ 140-47.] Then, on December 19, 2014, she moved the magistrate judge for leave to file the Second Amended Complaint, but did not mention – let alone request leave to file – the aider and abettor claim. [Dkt. no. 51.] Plaintiff's attempt to bring this new claim without moving the Court to do so violates this Court's orders. Accordingly, the Court GRANTS the Motion as to Plaintiff's aider and abettor claim and DISMISSES WITHOUT PREJUDICE Count V.[12]  See, e.g., Jones v.

_____

[11] As Defendants point out, they moved to dismiss the First Amended Complaint and argued that the aider and abettor claim was improperly brought. [Mem. in Supp. of Defendants Hawaii Behavioral Health, LLC and George Chopivsky, Jr.'s Motion for Partial Dismissal of First Amended Complaint Filed on November 19, 2014, filed 1/7/15 (dkt. no. 53-1) at 8-10.]

[12] The Court notes that, while the Second Amended Complaint includes allegations that Chopivsky aided and abetted others, it is not clear that these type of allegations regarding retaliatory coordination among employees, are envisioned by § 378(a)(3) and the Hawai`i legislature. Although the Court is unaware of any

(continued...)

<u>Home Mortgage Direct Lenders</u>, No. 13-15087, 2015 WL 1346162, at

*2 (9th Cir. Mar. 26, 2015) ("denial of leave to amend is

improper unless it is clear that the complaint could not be saved

by any amendment" (citing <u>Zucco Partners, LLC v. Digimarc Corp.</u>,

552 F.3d 981, 989 (9th Cir. 2009)).  As with all other litigants,

if she wishes to amend her complaint to add the new aider and

abettor claim, she may move the Court to do so before the

applicable deadline.

## III. <u>Defamation Claim (Count X)</u>

In the 10/31/15 Order, the Court dismissed without

prejudice Plaintiff's defamation claim against HBH on the ground

that it was preempted by the Hawai`i workers' compensation law.

The Court reasoned that proving a claim is preempted "simply

requires the finding of a causal connection between the injury

and any incidents of employment."  <u>Hough v. Pac. Ins. Co.</u>, 83

Hawai`i 457, 465, 927 P.2d 858, 866 (1996) (citations omitted).

It concluded that the "retaliation that occurred between February

and May 2012 was clearly incidental to Plaintiff's employment by

HBH since it dealt with, for example, a probationary plan,

restricting Plaintiff's access to HBH property, and statements

regarding her purported improprieties at work" and dismissed the

---

[12](...continued)
opinion addressing the issue, such allegations would appear to be
an end-run around the limit on individual liability imposed by
<u>Lales</u>.

defamation claim against HBH.  10/31/14 Order, 2014 WL 5528239,
at *8 (citation omitted).

In the Second Amended Complaint, Plaintiff alleges that
she was defamed by: (1) communications to a competitor that
implied that she was having a lesbian affair with her
heterosexual married subordinate; [Second Amended Complaint at
¶ 172;] and (2) complaints to the Hawai`i Department of Labor and
Industrial Relations ("DLIR") claiming Plaintiff and her life
partner "hid facts from [HBH], raided [HBH,] and damaged HBH"
[id. at ¶ 173].

This district court has explained,

> In order to sustain a claim for defamation, a
> plaintiff must establish: (1) a false and
> defamatory statement concerning another; (2) an
> unprivileged publication to a third party;
> (3) fault amounting at least to negligence on the
> part of the publisher or actual malice where the
> plaintiff is a public figure; and (4) either
> actionability of the statement irrespective of
> special harm or the existence of special harm
> caused by the publication.

Mahoe v. Operating Eng'rs Local Union No. 3 of the Int'l Union of
Operating Eng'rs, AFL-CIO, Civil No. 13-00186 HG-BMK, 2013 WL
5447261, at *7 (D. Hawai`i Sept. 27, 2013) (citing Gold v.
Harrison, 962 P.2d 353, 359 (Haw. 1998)).  Regarding the fourth
element, a plaintiff must allege and prove special damages unless
the defamatory statement falls within a special class of insults.
This district court has described: "Defamation per se is a
special character of defamation that consists of four categories:

20

(1) imputation of a serious crime involving moral turpitude,

(2) possession of a loathsome disease, (3) attack on the

plaintiff's competency in his business, trade, or profession, or

(4) unchastity in women." <u>Dowkin v. Honolulu Police Dep't</u>, Civil

No. 10-00087 SOM/LEK, 2010 WL 4961135, at *10 (D. Hawai`i Nov.

30, 2010) (citing <u>Carey v. Piphus</u>, 435 U.S. 247, 263, 98 S. Ct.

1042, 1052 n.18 (1978)).

For the same reason that this Court dismissed

Plaintiff's original defamation claim, the second ground for the

claim – the complaints to the Hawai`i DLIR – is preempted by the

workers' compensation law.  While these complaints did follow

after Plaintiff left HBH, they clearly related to, and were

incident to, her employment with HBH.  <u>See</u> <u>Hough</u>, 83 Hawai`i at

465, 927 P.2d at 866.  Thus, they are preempted.

The only claim remaining is related to HBH's statement

to competitors that Plaintiff was having an affair.[13]  Since

Plaintiff does not allege any special harm from this statement,

_____

[13] The Complaint also alleges that HBH "gay shamed"
Plaintiff, by essentially telling others she was involved in a
same-sex relationship.  The parties spend much space debating
whether this alone could be considered defamation per se.  Beyond
the fact that the statements were true, as Plaintiff has openly
admitted, this Court concludes that based on contemporary (and
binding) law, simply stating another is involved in a same-sex
relationship cannot be considered defamation per se.  <u>See, e.g.</u>,
<u>United States v. Windsor</u>, 133 S. Ct. 2675 (2013); <u>SmithKline
Beecham Corp. v. Abbott Labs.</u>, 740 F.3d 471, 483 (9th Cir. 2014)
(in applying <u>Windsor</u>, finding that discriminating based on sexual
orientation would "reinforce messages of stigma or second-class
status").

and it does not fall within a defamation per se category – it
falls short of a crime involving moral turpitude and does not
question Plaintiff's chastity – Count X fails to state a claim.
The Court thus GRANTS the Motion as to the defamation claim and
DISMISSES Count X.  In light of the 10/31/14 Order, the dismissal
is WITH PREJUDICE.

## IV.   **Invasion of Privacy Claim (Count XII)**

         In Count XII, Plaintiff alleges that HBH put Plaintiff
in a false light by,

> claiming that Plaintiff sabotaged Requests for
> Proposals with the Child and Adolescent Division
> (CAMHD) of the department of Health, had
> committed criminal acts against HBH, was making
> reports to various health care organizations to
> harm HBH's reputation, had violated HBH company
> policy regarding hiring, and forced [Kathy] Iona
> to falsify a report of witnessing sexual
> harassment against Plaintiff, amongst other
> things.

[Second Amended Complaint at ¶ 186.]  Although it is not clear
from the Second Amended Complaint to whom exactly Plaintiff made
these claims, in her memorandum in opposition, she concedes that
it was solely to "employees at HBH and various state agencies."
[Mem. in Opp. at 22.]  As Defendants argue, [Mem. in Supp. of
Motion at 20-21; Reply at 13-14,] this is insufficient
"publicity" to state a claim for false light.

         This district court has explained:

> Under the Restatement (Second) of Torts § 652E,
> which has been adopted by Hawai`i, the tort of
> false light is defined as follows:

22

> One who gives publicity to a matter
> concerning another that places the other
> before the public in a false light is subject
> to liability to the other for invasion of his
> privacy, if (a) the false light in which the
> other was placed would be highly offensive to
> a reasonable person, and (b) the actor had
> knowledge of or acted in reckless disregard
> as to the falsity of the publicized matter
> and the false light in which the other would
> be placed.

Shahata v. W Steak Waikiki, LLC, 721 F. Supp. 2d 968, 986 (D. Hawai`i 2010) (citing Chung v. McCabe Hamilton & Renny Co., Ltd., 109 Hawai`i 520, 534 n.18, 128 P.3d 833, 847 (2006)).

Regarding "publicity," the Restatement (Second) of Torts § 652D, comment a, distinguishes "publication" and "publicity." It explains:

> "Publicity," on the other hand, means that the
> matter is made public, by communicating it to the
> public at large, or to so many persons that the
> matter must be regarded as substantially certain
> to become one of public knowledge. . . . [The
> difference] is one of a communication that
> reaches, or is sure to reach, the public.
>
> Thus it is not an invasion of the right of
> privacy, within the rule stated in this Section,
> to communicate a fact concerning the plaintiff's
> private life to a single person or even to a small
> group of persons. . . . The distinction, in other
> words, is one between private and public
> communication.

Id.

Here, Defendants' statements, though harmful, are private, and cannot support a false light claim. The Court thus GRANTS the Motion as to Plaintiff's invasion of privacy claim and

DISMISSES WITHOUT PREJUDICE Count XII as to both Chopivsky and HBH.  Plaintiff could conceivably amend this claim if, in fact, the statements were more widely publicized.

## CONCLUSION

On the basis of the foregoing, Defendants Hawaii Behavioral, LLC and George Chopivsky, Jr.'s Motion for Partial Dismissal of Second Amended Complaint Filed on February 25, 2015, filed March 11, 2015, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is DENIED insofar as the Court dismisses without prejudice Counts V, and XII.  It is GRANTED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 29, 2015.



 /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge


RAELYNN J. HILLHOUSE VS. HAWAII BEHAVIORAL, LLC, ET AL; CIVIL 14-00155 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF SECOND AMENDED COMPLAINT FILED ON FEBRUARY 25, 2015