IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RAELYNN J. HILLHOUSE,          )     CIVIL 14-00155 LEK-BMK
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
HAWAII BEHAVORIAL HEALTH,      )
LLC; GEORGE CHOPIVSKY, JR. in  )
his individual capacity,       )
                               )
          Defendants.          )
_____)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS':
(1) MOTION TO STRIKE DECLARATIONS OF PLAINTIFF RAELYNN HILLHOUSE,
CYNTHIA CURATALO, AND ROBERT DAVÉ; AND (2) MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS AND FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Hawaii Behavioral Health, LLC

("HBH") and George Chopivsky, Jr.'s ("Chopivsky," collectively

"Defendants") Motion for Partial Judgment on the Pleadings and

for Partial Summary Judgment ("Motion for Partial Judgment"),

filed on October 2, 2015.  [Dkt. no. 132.]  Plaintiff Raelynn J.

Hillhouse ("Plaintiff") filed a memorandum in opposition to the

motion on November 16, 2015, and Defendants filed a reply on

November 23, 2015 ("Partial Judgment Reply").  [Dkt. nos. 156,

176.]  Also before Court is Defendants' Motion to Strike

Declarations of Plaintiff Raelynn Hillhouse, Cynthia Curatalo,

and Robert Davé Filed on November 16, 2015 [ECF 157] ("Motion to

Strike").[1]  [Filed 11/23/15 (dkt. no. 174).]  Plaintiff filed a

_____

[1] Also on November 23, 2015, Defendants filed an ex parte
                                              (continued...)

memorandum in opposition to the Motion to Strike on December 2, 2015.  [Dkt. no. 190.]

The Motion for Partial Judgment and the Motion to Strike came on for hearing on December 7, 2015 ("12/7/15 Hearing").  With leave of the Court, Plaintiff filed a supplement to the memorandum in opposition to the Motion for Partial Judgment on December 7, 2015 ("Plaintiff's Supplement") and Defendants filed a response on December 8, 2015 ("Defendants' Supplement").  [Dkt. nos. 197, 202.]  After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, the Motion for Partial Judgment and the Motion to Strike are HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

The relevant factual and procedural background of this case is set forth in the Court's:  (1) September 18, 2014 Order Granting in Part and Denying in Part Defendant Chopivsky's Motion for Partial Dismissal of Complaint Filed on March 28, 2014 ("9/18/14 Order"); [dkt. no. 42;[2]] (2) October 31, 2014 Order Granting in Part and Denying in Part Defendant Hawaii Behavioral

---

[1](...continued)
motion to shorten time for hearing on the motion to strike, which the Court granted in an entering order on November 24, 2015. [Dkt. nos. 175, 178.]

[2] The 9/18/14 Order is also available at 2014 WL 4662378.

2

Health, LLC's *Amended* Motion for Partial Dismissal of Complaint Filed on March 28, 2014 ("10/31/14 Order"); [dkt. no. 45;[3]] and May 29, 2015 Order Granting in Part and Denying in Part Defendants' Motion for Partial Dismissal of Second Amended Complaint Filed on February 25, 2015 ("5/29/15 Order") [dkt. no. 82[4]].  The Court will only repeat the background that is relevant to the instant motions.

On August 25, 2015, Plaintiff filed her Third Amended Complaint against her former employer, HBH, and its majority owner, Chopivsky.[5]  [Dkt. no. 109.]  The lawsuit focuses on a series of allegedly discriminatory and retaliatory actions that began in July 2011 and culminated in her resignation from HBH in February 2012.  Specifically, Plaintiff alleges that the former President of HBH and friend of Chopivsky, Alexander J. Hoinsky ("Hoinsky"), sexually harassed her and, after she complained, Chopivsky and HBH retaliated against her.  The Third Amended Complaint states the following claims:  unlawful sex discrimination under Title VII of the Civil Rights Act of 1964

---

[3] The 10/31/14 Order is also available at 2014 WL 5528239.

[4] The 5/29/15 Order is also available at 2015 WL 3448706.

[5] Plaintiff filed a Motion for Leave to File Third Amended Complaint on July 17, 2015, and the magistrate judge granted the motion on August 18, 2015.  [Dkt. nos. 92, 107.]  On August 27, 2015, Defendants appealed the magistrate judge's decision, and, in an order filed on October 29, 2015, this Court denied the appeal.  [Dkt. nos. 114, 141.]

("Title VII"), 42 U.S.C. § 2000e-2, against HBH ("Count I"); [Third Amended Complaint at ¶¶ 96-100;] unlawful retaliation under Title VII against HBH ("Count II"); [id. at ¶¶ 101-08;] unlawful retaliation under Haw. Rev. Stat. § 378-2 against HBH ("Count III"); [id. at ¶¶ 109-15;] unlawful retaliation under Haw. Rev. Stat. § 378-2 against Chopivsky (as an aider and abettor) ("Count IV"); [id. at ¶¶ 116-23;] unlawful retaliation against a whistleblower under Haw. Rev. Stat. § 378-62 against HBH ("Count V"); [id. at ¶¶ 124-29;] failure to pay wages under Haw. Rev. Stat. Chapter 388 against HBH ("Count VI"); [id. at ¶¶ 130-34;] intentional infliction of emotional distress ("IIED") against HBH and Chopivsky ("Count VII"); [id. at ¶¶ 135-38;] interference with prospective economic advantage against HBH and Chopivsky ("Count VIII"); [id. at ¶¶ 139-47;] and breach of contract for unpaid vacation and bonuses under Kinoshita v. Canadian Pacific Airlines, Ltd., 68 Haw. 594, 724 P.2d 110 (1986), against HBH and Chopivsky ("Count IX") [id. at ¶¶ 148-54]. Plaintiff seeks the following relief: general and/or compensatory damages; special damages; punitive and/or liquidated or exemplary damages; attorneys' fees and costs, pre-judgment interest, and any other legal and equitable relief available under the state and federal statutes; and any other available equitable relief. [Id. at Prayer for Relief ¶¶ A-E.] The Motion

for Partial Judgment seeks dismissal or summary judgment on at least part of all nine counts.

## DISCUSSION

### I.   Motion to Strike

Defendants allege:  (1) that the Declaration of Raelynn J. Hillhouse, [Plf.'s Separate and Concise Statement of Facts ("Plf.'s CSOF"), filed 11/16/15 (dkt. no. 157), Decl. of Raelynn J. Hillhouse ("Hillhouse Decl."),] includes inadmissible hearsay as well as conclusions that violate Fed. R. Civ. P. 56(c)(4) and Rule 7.6 of the Local Rules of the United States District Court for the State of Hawai`i ("Local Rules").  [Mem. in Supp. of Motion to Strike at 2-7.]  Further, Defendants state that the Declaration of Cynthia Curatalo, [Plf.'s CSOF, Decl. of Cynthia Curatalo ("Curatalo Decl."),] also contains hearsay, conclusions, and statements that lack foundation in violation of Fed. R. Civ. P. 56(c)(5) and Local Rule 7.6.  Finally, Defendants assert that the Declaration of Robert Davé, Ph.D., [id., Decl. of Robert Davé, Ph.D. ("Davé Decl."),] goes "beyond his capacity as an expert psychologist."  [Mem. in Supp. of Motion to Strike at 9.]

The Motion to Strike is GRANTED IN PART AND DENIED IN PART.  It is GRANTED as to paragraphs seventeen and forty-two of the Hillhouse Declaration, which contain conclusions and commentary that are not permitted in a filing in opposition to a

5

motion for summary judgment.  See, e.g., Fed. R. Civ. P. 56(c)(4)

("An affidavit or declaration used to support or oppose a motion

must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated.").  The Court agrees

that Dr. Davé goes beyond the scope of the his expertise, and the

Motion to Strike is GRANTED as to the Davé Declaration.  Finally,

the Motion to Strike is DENIED as to the Curatalo Declaration

because the Court, for the purposes of the Motion to Strike,

agrees with Plaintiff that the statements therein are admissible

under Fed. R. Evid. 602, 701, and 801(d)(2).

## II.  Motion for Partial Judgment

### A.  Title VII Sex Discrimination (Count I)

HBH moves for judgment on the pleadings because Hoinsky

was a non-employee, and HBH therefore is liable "only if it knew,

or should have known, about the harassment."  [Mem. in Supp. of

Motion for Partial Judgment at 15.]  Alternatively, HBH moves for

summary judgment on Count I because "Plaintiff cannot raise a

genuine issue that HBH failed to take appropriate corrective

action" when it found out that a non-employee, Hoinsky, was

accused of sexual harassment.  [Id. at 16-17.]

Plaintiff alleges that, on a trip to Hawai`i in July

2011 to "visit and inspect" HBH offices, Hoinsky repeatedly

sexually harassed her.  [Third Amended Complaint at ¶¶ 15-23.]

On July 28, 2011, Plaintiff was notified that Hoinsky was appointed as President of HBH, and in August 2011 he sexually harassed her again.  [Id. at ¶¶ 23-31.]  Plaintiff asserts that she reported this harassment to Chopivsky on September 2, 2011, and on September 14 and 15, 2011.  [Id. at ¶ 33.]  Even after reporting Hoinsky's alleged harassment, however, Hoinsky "play[ed] an active behind the scenes role in monitoring and participating in the decision-making related to HBH's operations and more specifically, Plaintiff's work."  [Id. at ¶ 71.] Chopvisky allegedly copied Hoinsky on emails related to Plaintiff's work performance, voiced anger and frustration about not being able to hire Hoinsky because of Plaintiff's allegations, and hatched a plan to make Plaintiff quit her job. [Id. at ¶¶ 72-74.]

To establish a claim for Title VII sex discrimination by a coworker,

> A plaintiff must established that the conduct at issue was both objectively and subjectively offensive:  he must show that a reasonable person would find the work environment to be "hostile or abusive," and that he in fact did perceive it to be so.  Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).  Where an employee is allegedly harassed by co-workers, the employer may be liable if it knows or should know of the harassment but fails to take steps "reasonably calculated to end the harassment."  Nichols [v. Azteca Rest. Enters., Inc.], 256 F.3d [864, 875 (9th Cir. 2001)] (internal quotation marks omitted).

Dawson v. Entek Int'l, 630 F.3d 928, 937-38 (9th Cir. 2011).  The

7

Ninth Circuit has stated that,

> employers are liable for harassing conduct by non-employees "where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct." <u>Folkerson v. Circus Circus Enters., Inc.</u>, 107 F.3d 754, 756 (9th Cir. 1997); <u>see also</u> <u>Lockard v. Pizza Hut, Inc.</u>, 162 F.3d 1062, 1073 (10th Cir. 1998) (adopting <u>Folkerson</u> standard). The Equal Employment Opportunity Commission Guidelines endorse this approach: "An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees **in the workplace**, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action." 29 C.F.R. § 1604.11(e) (emphasis added).

<u>Little v. Windermere Relocation, Inc.</u>, 301 F.3d 958, 968 (9th Cir. 2002) (emphasis in <u>Little</u>).

### 1. **HBH is not Entitled to Judgment on the Pleadings on Count I**

While HBH states that "[t]he [Third Amended Complaint] only describes [Hoinsky] as a former president of HBH and indicates that his appointment was not announced until July 28, 2011 – after his July 2011 visit[,]" [Mem. in Supp. of Motion for Partial Judgment at 16 n.7 (citations and internal quotation marks omitted),] they are incorrect. Plaintiff states that she was sexually harassed by Hoinsky, "an agent and former President of Defendant HBH." [Third Amended Complaint at ¶ 15.] Title VII "limits liability to employers with 15 or more employees and any agent thereof, which the Ninth Circuit found subjected employers

8

to liability for acts of their employees under the doctrine of *respondeat superior* only." <u>Chenoweth v. Maui Chem. & Paper Prods., Inc.</u>, CV. No. 07-00092 DAE-KSC, 2007 WL 2479297 (D. Hawai`i Aug. 27, 2007).  The Court FINDS that, "on the face of the pleadings[,]" there is a material issue of fact as to Hoinsky's employment status with HBH, and HBH's Motion for Partial Judgment, insofar as it moves for judgment on the pleadings as to Count I, is DENIED.  <u>See Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.</u>, 644 F.3d 934, 937 n.1 (9th Cir. 2011) ("Judgment on the pleadings under Rule 12(c) is proper when the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law." (citation omitted)).

### 2. HBH is not Entitled to <u>Summary Judgment on Count I</u>

Insofar as HBH's Motion for Partial Judgment moves for summary judgment on Count I, it must also be denied because the record does not show "that there is no genuine dispute as to any material fact."  <u>See</u> Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); <u>see also Pitts v. Sequeira</u>, Civil No. 11-00281 LEK/RLP, 2014 WL 346523, at *2 ("[A] district court . . . has discretion to consider any evidence in

9

the record." (citing <u>Carmen v. San Francisco Unified Sch. Dist.</u>,

237 F.3d 1026, 1031 (9th Cir. 2001))).  At her deposition,

Hillhouse stated that it was her understanding that Hoinsky was

not an employee of HBH:

> Q.  What did you understand [Hoinsky's] role with
> HBH to be as of July 2011?
>
> A.  As of the first part of July 2011, he was sent
> down as an agent of Mr. Chopivsky.  He was CFO for
> Mr. Chopivsky's other concerns.
>
> Q.  Was it your understanding he was a consultant
> to HBH?
>
> A.  It was my understanding he was some kind of an
> employee of United Psychiatric.
>
> Q.  He was not – when he first came out, he was
> not an employee of HBH, was that your
> understanding?
>
> A.  Yes, he was not an employee of HBH when he
> first came out.

[Defs.' Concise Statement of Facts ("Defs.' CSOF"), filed 10/2/15

(dkt. no. 133), Decl. of Christopher S. Yeh ("Yeh Decl."), Exh. G

(excerpts of 9/3/15 Depo. of Raelynn J. Hillhouse) ("Hillhouse

Depo."), at 63.]  At his deposition, however, Hoinsky stated that

he was an employee of HBH:

> Q.  And how many of George Chopivsky's businesses
> did you work for –
>
> A.  Direct –
>
> Q.  – in the Summer of 2011?
>
> A.  Directly three, and then indirectly, the
> Ukranian operations I just accumulated financial
> information.

Q.  And what were the ones that you worked for directly?

A.  CBH, Capital Behavioral Health.  CCS, which is Capital Community Services, and Berks Behavioral Health.

Q.  And what about HBH?

A.  Yeah.

Q.  And HBH?

A.  Yes.

Q.  So, there were four of them?

A.  Right.

[Plf.'s CSOF, Decl. of Anthony "T.J." Quan ("Quan Decl."), Exh. C (11/2/15 Depo. of Alexander Hoinsky) ("Hoinsky Depo."), at 73-74.]

Further, there is also a genuine issue of material fact regarding the adequacy of HBH's response to the allegations of sexual harassment.  HBH states that:  "Chopivsky agreed that Hoinsky would not be President and would not have a role in HBH"; and Plaintiff's only interactions with Hoinsky after she reported his actions to Chopivsky were two phone calls where "Hoinsky did not say anything inappropriate."  [Mem. in Supp. of Motion for Partial Judgment at 16-17.]  Plaintiff notes, however, that during the time of the alleged harassment she "repeatedly discussed Hoinsky's acts with Cynthia Curatalo, HBH's then CEO, [and] Michael Lukson, HBH's then CFO."  [Mem. in Opp. to Motion for Partial Judgment at 17-18 (citation omitted).]  Moreover, she

11

argues that "Chopivsky did not perform a proper investigation under the HBH policy and instead allowed Hoinsky to continue to be involved in HBH[]." [Id. at 18.]  HBH's argument at the 12/7/15 Hearing that, because Plaintiff did not report the July 2011 harassment as soon as it happened, she waived the right to do so at all, is unavailing.

Because there are material factual questions about Hoinsky's relationship with HBH and whether or not HBH's response to the allegations of harassment was adequate, HBH's Motion for Partial Judgment, insofar as it seeks summary judgment on Count I, is DENIED.

## B.  **Constructive Discharge**

HBH states that it is entitled to summary judgment on the constructive discharge claims in Counts II and III because: Plaintiff's working conditions were insufficient to meet the standard for constructive discharge; Plaintiff did not attempt to remedy the situation; and/or the conditions were not a response to Plaintiff's protected activity.  [Mem. in Supp. of Motion for Partial Judgment at 17, 20, 21.]  Plaintiff responds that:  her working conditions were intolerable; any attempt to remedy the situation would have been futile; and the conditions were created in response to a protected activity – namely, reporting the alleged sexual harassment.  [Mem. in Opp. to Motion for Partial Judgment at 18, 24, 27-28.]

In the Ninth Circuit, "[w]e set the bar high for a
claim of constructive discharge because federal
antidiscrimination policies are better served when the employee
and employer attack discrimination within their existing
employment relationship, rather than when the employee walks away
and then later litigates whether his employment situation was
intolerable." Poland v. Chertoff, 494 F.3d 1174, 1184 (9th Cir.
2007) (footnote and citation omitted).[6]  This district court has
stated:

> To survive summary judgment on a constructive
> discharge claim, a plaintiff must show a triable
> issue of fact as to whether a reasonable person
> would have felt compelled to quit "because of
> intolerable and discriminatory working
> conditions." Steiner v. Showboat Operating Co.,
> 25 F.3d 1459, 1465 (9th Cir. 1994); see also
> Draper v. Coeur Rochester, Inc., 147 F.3d 1104
> (9th Cir. 1998) ("In such cases the individual has
> simply had enough; [the individual] can't take it
> anymore."). The issue of whether working
> conditions were so intolerable that they warranted
> resignation is usually a question best left to the
> factfinder. Thomas v. Douglas, 877 F.2d 1428,
> 1434 (9th Cir. 1989). Generally, "a single
> isolated instance of employment discrimination is
> insufficient as a matter of law to support a
> finding of constructive discharge." Watson v.
> Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir.
> 1987). To prove constructive discharge, the

---

[6] While Count II is brought under Title VII and Count III
under Haw. Rev. Stat. § 378-2, "[t]he Hawaii Supreme Court has
stated that, when addressing employment discrimination claims
brought under H.R.S. § 378-2, the court looks to 'interpretation
of analogous federal laws by the federal courts for guidance.'"
Wigent v. Sci. Applications Int'l Corp., 19 F. Supp. 3d 1012,
1026 (D. Hawai`i 2014) (quoting Schefke v. Reliable Collection
Agency, Ltd., 96 Hawai`i 408, 425, 32 P.3d 52 (Haw. 2001)).

plaintiff must show "aggravating factors" or a
continuous pattern of discrimination.  Id.

United States E.E.O.C. v. NCL Am., Inc., 535 F. Supp. 2d 1149,

1160 (D. Hawai`i 2008).  "A constructive discharge finding

requires the application of an objective standard."  Poland, 494

F.3d at 1187 (citing Penn. State Police v. Suders, 542 U.S. 291,

141, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004)).

Plaintiff asserts that she "was subjected to an

extensive and continuous pattern of discriminatory conduct and

retaliatory animus by Defendants."  [Mem. in Opp. to Motion for

Partial Judgment at 21.]  This included:  elevating Hoinsky to

the HBH Board of Directors; Chopivsky's "unnecessary heightened

scrutiny, and petty, needless, indignities in her work

environment"; and "for all practical purposes, effectively

demot[ing] Ms. Hillhouse and elevat[ing] Lukson to HBH's senior

officer."  [Id. at 21-23 (citations omitted).]  In the Third

Amended Complaint, Plaintiff states that it eventually reached a

boiling point:

> Defendants' acts of imposing unequal terms and
> conditions in Plaintiff's employment, their
> continued retaliatory and discriminatory
> harassment, and Plaintiff's ensuing loss of power
> to protect the safety of the nearly 40 foster
> children in Defendant HBH's custody and to
> maintain contractual compliance made the working
> conditions of Plaintiff's employment so
> intolerable that Plaintiff, on the evening of
> February 10, 2012, tendered her resignation to
> Defendants.

[Third Amended Complaint at ¶ 81.]

14

Plaintiff's working conditions do not support a finding of discharge.[7]  Plaintiff does not allege that Hoinsky sexually harassed her or engaged in any other inappropriate activity after September 2011.  Even reading the facts in the light most favorable to Plaintiff, see, e.g., Maui Elec. Co. v. Chromalloy Gas Turbine, LLC, Civil No. 12-00486 SOM-BMK, 2015 WL 1442961, at *4 (D. Hawai`i Mar. 27, 2015) (On a motion for summary judgment, "[a]ll evidence and inferences must be construed in the light most favorable to the nonmoving party." (citing T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987))), the Court cannot conclude that Hoinsky's actions contributed to a constructive discharge.  See Hardage v. CBS Broad., Inc., 427 F.3d 1177, 1184-85 (9th Cir. 2005) ("[The plaintiff] concedes that the last time Sparks made inappropriate sexual advances or comments was in March of 2001, yet he did not resign until five months later, on August 31, 2001.  As a result, even if Sparks' sexual harassment created a hostile working

---

[7] In the Third Amended Complaint, Plaintiff states that "Defendants continued their harassing, retaliatory, and discriminatory practices against Plaintiff" after her resignation.  [Third Amended Complaint at ¶ 82.]  "[T]he United States Supreme Court has required plaintiffs to present evidence that working conditions were so intolerable that a reasonable person would have felt compelled to resign to prove that they have been constructively discharged." Poland, 494 F.3d at 1186 (citing Penn. State Police, 542 U.S. at 141, 124 S. Ct. 2342).  Therefore, any allegations of harassment or retaliation after Plaintiff resigned are not, as a matter of law, part of her constructive discharge claim.

environment, such harassment ceased well in advance of Hardage's resignation.").[8]  Similarly, Plaintiff's assertions that Chopivsky's increased oversight of her work do not support a claim of constructive discharge.  See, e.g., Garcia v. City of Everett, No. 14-30 RAJ, 2015 WL 1759208, at *10 (W.D. Wash. Apr. 17, 2015) ("The fact that Mr. Wolfington feels Captain Fudge excessively scrutinized his work and assessed his performance too harshly does not amount to the kind of egregious misconduct required for a constructive discharge claim.").  Plaintiff's assertion that she was demoted is also not sufficient to support a claim of constructive discharge.  In Schnidrig v. Columbia Machine, Inc., the plaintiff alleged that he was constructively discharged because:

> 1) He was replaced as head of the company by a man fifteen years younger than him; 2) Columbia did not give him a new position; 3) Another vice-president was given a pay raise so that he was earning more than Schnidrig; 4) He was forced to move out of his office and into a much smaller office; 5) He was excluded from a lunch meeting with officers from First Interstate Bank; and 6) Other executives were told not to speak to him about financial or other matters.

80 F.3d 1406, 1411 (9th Cir. 1996).  The Ninth Circuit, however, disagreed and affirmed the district court's grant of summary judgment to the plaintiff's former employer, noting that "[the

---

[8] The Ninth Circuit subsequently amended the opinion, but the amendments are not relevant to the instant matter.  See Hardage v. CBS Broad., Inc., 433 F.3d 672 (9th Cir. 2006); Hardage v. CBS Broad., Inc., 436 F.3d 1050 (9th Cir. 2006).

plaintiff] was not demoted, did not receive a cut in pay, was not encouraged to resign or retire, and was not disciplined." Id. at 1412.  The court held that "[a]ccepting all of [the plaintiff's] allegations as true, his working conditions were not so intolerable and discriminatory that a reasonable person would feel forced to resign." Id. Here too, prior to Plaintiff's resignation, she was not demoted,[9] she did not receive a pay cut, she was not encouraged to resign,[10] and she was not disciplined.[11]

---

[9] Plaintiff claims that "Chopivsky additionally instructed Mr. Lukson that he no longer reported to Plaintiff, instead reporting to Defendant Chopivsky directly." [Third Amended Complaint at ¶ 66.]  Lukson, however, disputes this claim.  See Plf.'s CSOF, Quan Decl., Exh. A (10/7/15 Depo. of Michael Lukson) ("Lukson Depo."), at 187 (in response to Plaintiff's counsel's question "[d]id he ever ask you to report directly to him[,]" Lukson responds, "[n]o.").

[10] The Court notes the record shows an effort on the part of Chopivsky to include Plaintiff in HBH's future plans.  On February 8, 2012, Chopivsky invited Plaintiff to Washington, D.C. for a meeting focused "principally on crystallizing goals and attendent work plans, for you and other key staff." [Quan Decl., Exh. 27 (email from Chopivsky to Hillhouse).]  Plaintiff explains that, during the Cold War she "was engaged in commerce and trade behind the Iron Curtain," and that she has "been in what the layperson would consider life-threatening situations." [Hillhouse Decl. at ¶ 96-97.]  She states that she "believed the invitation to come to D.C. was a trap and she feared for her physical safety." [Mem. in Opp. to Motion for Partial Judgment at 10 (citation omitted).]  Although the Court does not question the sincerity of Plaintiff's fear, the controlling law requires that the Court apply a reasonable person standard to a claim of constructive discharge.  Based on this record, the Court cannot conclude that a reasonable person would feel forced to quit.

[11] Plaintiff was not placed on a "probationary action plan" until February 12, 2012 – two days after she resigned.  [Third Amended Complaint at ¶ 83.]

17

Finally, Plaintiff's claim that she could no longer protect the
children in HBH's foster care program is not an aggravating
factor or evidence of a pattern of abuse that would constitute a
constructive discharge.[12]  It is clear that Plaintiff felt she
was being pushed out, but this in and of itself does not amount
to a constructive discharge.  See, e.g., Atwood v. Consol. Elec.
Distribs., Inc., 231 F. App'x 767, 769 (9th Cir. 2007) ("The mere
fact that [the plaintiff] felt that [her] termination was
inevitable is not enough to reach a constructive discharge.").

Even viewing all the evidence "in the light most
favorable to" Plaintiff, the Court "cannot see how a reasonable
trier of fact could find that she was driven from the
workplace."[13]  See Brooks v. City of San Mateo, 229 F.3d 917, 930

---

[12] The Court notes that, while Plaintiff argues that her
inability to maintain contractual compliance for HBH's foster
care program contributed to her constructive discharge, this
claim is not supported by the record.  At her deposition
Plaintiff stated that, while Chopivsky told her to reduce foster
care program personnel, she warned him that any reduction would
threaten "contractual compliance and the safety of the children."
[Hillhouse Depo. at 223, 226-27.]  Further, she states that she
did not make any reductions, and she provides no evidence that
the foster care program staff was ever reduced.  [Id. at 226,
269-71.]

[13] Plaintiff argues that "the factual justification for
Ms. Hillhouse's constructive discharge claim is normally a
question for the jury to decide."  [Mem. in Opp. to Motion for
Partial Judgment at 18.]  This Court, however, has the authority
to determine whether or not the constructive discharge claim
fails as a matter of law.  See, e.g., Brooks, 229 F.3d at 930
("While Watson holds that the determination of whether working
conditions are sufficiently egregious to support a constructive
(continued...)

(9th Cir. 2000).   Therefore, the Motion for Partial Judgment, insofar as it seeks summary judgment on Plaintiff's constructive discharge claim in Counts II and III, is GRANTED.

**C.   Lost Bonuses**

**1.   The Request for a Continuance under Fed. R. Civ. P. 56(d) is Denied**

Plaintiff seeks a Fed. R. Civ. P. 56(d) continuance because "her damages may [be] better quantified once she obtains information related to HBH's finances and income from 2012 to present."  [Mem. in Opp. to Motion for Partial Judgment at 31.] Rule 56(d)(2) states, in pertinent part, that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" "allow time to obtain affidavits or declarations or to take discovery."  Plaintiff has not provided the requisite affidavit or declaration.  Moreover, even if Plaintiff had filed the Rule 56(d) request properly, it would be denied.  This district court has recently stated,

> Whether to deny a Rule 56(d) request for further discovery by a party opposing summary judgment is within the discretion of the district court.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 920-21 (9th Cir. 1996).  To obtain a continuance under Rule 56(d), the party opposing a motion for summary judgment must make "(a) a

---

[13](...continued)
discharge theory is usually a jury question, see Watson, 823 F.2d at 361, the district court did not err in deciding that [the plaintiff's] claim fails as a mater of law.").

timely application which (b) specifically
identifies (c) relevant information, (d) where
there is some basis for believing that the
information sought actually exists." Blough v.
Holland Realty, Inc., 574 F.3d 1084, 1091 n.5 (9th
Cir. 2009) (citation omitted).  "A party
requesting a continuance pursuant to Rule [56(d)]
must identify by affidavit the specific facts that
further discovery would reveal, and explain why
those facts would preclude summary judgment."
Tatum v. City & Cnty. of San Francisco, 441 F.3d
1090, 1100 (9th Cir. 2006).  Moreover, "[t]he
burden is on the party seeking additional
discovery to proffer sufficient facts to show that
the evidence sought exists." Nidds, 113 F.3d at
921.  The movant must also show diligence in
previously pursuing discovery.  See Pfingston v.
Ronan Engineering Co., 284 F.3d 999, 1005 (9th
Cir. 2002) ("The failure to conduct discovery
diligently is grounds for the denial of a Rule
56[d] motion.").

Liberty Mut. Ins. Co. v. Sumo-Nan LLC, CIVIL NO. 14-00520 DKW-

KSC, 2015 WL 7303523, at *5 (D. Hawai`i Nov. 18, 2015)

(alterations in Liberty Mut.).  Defendants assert that "[n]othing

in Defendants' anticipated financial records show the

profitability of Plaintiff's unproven lines of business, nor does

Plaintiff specify how this would be shown."  [Part. Judg. Reply

at 17.]  The Court agrees.  Plaintiff's request for a Rule 56(d)

continuance is therefore DENIED.

### 2. Plaintiff's Claim for Lost Bonuses is too Speculative

Plaintiff's claim for lost bonuses is too speculative

and must be dismissed.  "The Hawai`i Supreme Court has noted that

speculative damages are not recoverable in actions arising under

contract or in tort." McDevitt v. Guenther, 522 F. Supp. 2d

20

1272, 1287 (D. Hawai`i 2007) (citing <u>Roxas v. Marcos</u>, 89 Hawai`i 91, 140-141 n.33, 969 P.2d 1209, 1258-1259 n.33 (Haw. 1998)). Here, Plaintiff seeks damages in the amount of $19,000 for lost bonus in the first quarter of 2012.  <u>See</u> Hillhouse Depo., Depo. Exh. 32 (Plaintiff's response to Defendants' interrogatories), at 9.  However, Plaintiff herself admitted in her deposition that she was not entitled to any bonus for the first quarter of 2012. Hillhouse Depo. at 292 ("First quarter of 2012, the net income, according to the revised financials, which were not congruent with what I had been told at the time was going to come out for January, no bonus would have been due.").

Further, Plaintiff seeks $3,400,000 in lost bonuses "based upon approved development plans with HBH and the pro forma that were submitted in D.C." <u>See</u> <u>id.</u>, Depo. Exh. 32 at 9.  At her deposition, Plaintiff admitted that this number "assumes that all of those new programs would have been up and running and profitable." [Hillhouse Depo. at 293.]

Because Plaintiff admits that she is not entitled to damages from the first quarter of 2012, and because the remainder of the lost bonuses claim is based on speculative profits from programs that were not developed, the Court FINDS that there is no issue of material fact and CONCLUDES that HBH is entitled to summary judgment.  The Motion for Partial Judgment, insofar as it

seeks summary judgment on Plaintiff's claim for lost bonuses, is GRANTED.

### D.  Aider and Abettor Liability Under Haw. Rev. Stat. § 378-2

Chopivsky seeks judgment on the pleadings as to Count IV.  According to Plaintiff, Chopivsky "is the 85% majority share-holder and current Chief Executive Officer" of HBH.  [Third Amended Complaint at ¶ 9.]  Plaintiff alleges that Chopvisky is liable "as an 'aider and abettor' to Defendant HBH's discrimination and retaliation under Haw. Rev. Stat. § 378-2(3)." [Id.]  She claims that "[t]hrough his actions and directives, Defendant Chopivsky aided, abetted, incited, compelled, and/or coerced multiple HBH employees/contractors/managers, including Mr. Lukson, Hoinsky, and Hamarat, to engage in a campaign of continuing harassment, discrimination, and retaliation against Plaintiff."  [Id. at ¶ 119.]  Chopivsky argues, inter alia, that "he is HBH's majority member and . . . cannot aid and abet himself."  [Mem. in Supp. of Motion for Partial Judgment at 27.]

Haw. Rev. Stat. § 378-2(a)(3) states:  "It shall be an unlawful discriminatory practice[] [f]or any person, whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so."  Insofar as Plaintiff alleges that Chopivsky aided and abetted HBH, this argument fails as a matter of law.  Chopivsky is the majority owner of HBH, his

22

actions were taken as the majority owner of HBH, and Chopivsky cannot aid and abet himself.[14]  See, e.g., Park v. Oahu Transit Servs., Inc., CV NO 10-00445-DAE, 2011 WL 3490190, at *8 (D. Hawai`i Aug. 10, 2011) ("the Individual Defendants may not be held liable under § 378-2(3) for any discriminatory behavior they may have conducted themselves, because they cannot be liable for aiding and abetting [themselves]" (alteration in Park) (citation and internal quotation marks omitted)).  The Court FINDS that there is no issue of material fact and CONCLUDES that Chopivsky is entitled to judgment as a matter of law as to Plaintiff's claim that he aided and abetted HBH.  The Motion for Partial Judgment, insofar as it seeks dismissal on the pleadings of Count IV against Chopivsky as aider and abettor of HBH, is GRANTED and that claim is DISMISSED WITH PREJUDICE.  See, e.g., Aana v. Pioneer Hi-Bred Int'l, Inc., Civil Nos. 12-00231 LEK-BMK, 12-00665 LEK-BMK, 2014 WL 806224, at *7 (D. Hawai`i Feb. 27, 2014) (Dismissing a claim with prejudice on a Fed. R. Civ. P. 12 motion because "[the plaintiffs] cannot cure the defects in this claim

_____

[14] In her Memorandum in Opposition to the Motion for Partial Judgment, Plaintiff argues that "[a]lthough Plaintiff's Third Amended Complaint alleges Chopivsky was 'agent' of HBH, Chopivsky admitted in his deposition that he oversaw HBH's operations and took actions against Ms. Hillhouse not only as member of HBH, but also as a representative of United Psychiatric Corporation." [Mem. in Opp. to Motion for Partial Judgment at 33 (citation omitted).]  This allegation is not part of the Third Amended Complaint, and Plaintiff's change in position is improper.

by amendment." (citing <u>Harris v. Amgen, Inc.</u>, 573 F.3d 728, 737 (9th Cir. 2009))).

Plaintiff's claim against Chopivsky for aiding and abetting other HBH employees in unlawful retaliation against Plaintiff in violation of § 378-2(a)(3) cannot be dismissed on the pleadings.  On a motion for judgment on the pleadings, the court must "accept as true all allegations in [the plaintiff's] complaint and treat as false those allegations in the answer that contradict [the plaintiff's] allegations." <u>MacDonald v. Grace Church Seattle</u>, 457 F.3d 1079, 1081 (9th Cir. 2006).  In <u>White v. Pacific Media Group, Inc.</u>, this district court concluded that a supervisor, in his individual capacity, can be held liable for aiding and abetting discrimination.  322 F. Supp. 2d 1101, 1114-15 (D. Hawai`i 2004).  The plaintiff in <u>White</u>, however, "failed to identify any discriminatory practice [the defendant] aided and abetted." <u>Id.</u>; <u>see also</u> <u>Lum v. Kauai Cty. Council</u>, Civ. No. 06-00068 SOM/LEK, 2007 WL 3408003, at *5 (D. Hawai`i Nov. 9, 2007) (noting that in <u>White</u> "Judge Ezra recognized that it was theoretically possible that the defendant supervisor could have been an aider or abettor of discrimination and therefore individually liable under section 378-2(3)." (citation omitted)).

Plaintiff alleges, *inter alia*:  "Defendant Chopivsky ordered Mr. Lukson to give Plaintiff a list of tasks to 'run her out' of her position"[;] [Third Amended Complaint at ¶ 75;]

24

"Lukson had obviously been ordered to spy on her and then report on her to Chopivsky"; [id. at ¶ 78;] and "Defendant Chopivsky directed Mr. Lukson[] to spread false and defamatory rumors and statements about Plaintiff through Lukson's mother, Sharon Ruffner, and Errol Hamarat, and others" [id. at ¶ 84].   Accepting all of the allegations in the Third Amended Complaint as true, the Court FINDS that Plaintiff has sufficiently pled a claim for aider and abettor liability under Haw. Rev. Stat. § 378-2(a)(3). Therefore, insofar as Count IV states a claim against Chopivksy for aiding and abetting other individual HBH employees, including Lukson, the Motion for Partial Judgment is DENIED.

      **E.**   **Whistleblower Retaliation**

      HBH seeks judgment on the pleadings as to Count V, retaliation against a whistleblower under the Hawai`i Whistleblower Protection Act ("HWPA"), Haw. Rev. Stat. § 378-62. HBH states that "Plaintiff fails to adequately plead a causal link between her whistleblowing and any adverse action."  [Mem. in Supp. of Motion for Partial Judgment at 27.]  Plaintiff states that she engaged in protected activity and that she suffered "multiple adverse actions . . . at the hands of the Defendants." [Mem. in Opp. to Motion for Partial Judgment at 34.]

      Haw. Rev. Stat. § 378-62 provides:

> An employer shall not discharge, threaten, or
> otherwise discriminate against an employee
> regarding the employee's compensation, terms,

25

conditions, location, or privileges of employment because:

    (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

        (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or

        (B) A contract executed by the State, a political subdivision of the State, or the United States, unless the employee knows that the report is false; or

    (2) An employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

This district court stated that "three elements can be extrapolated from the language of the statute, together with the Hawaii Supreme Court's interpretation of claims under § 378-62." Griffin v. JTSI, Inc., 654 F. Supp. 2d 1122, 1130 (D. Hawai`i 2008) (citations omitted). "First, there must be a showing that the employee engaged in protected conduct as it is defined by the HWPA"; [s]econd, the employer is required to take some adverse action against the employee"; and "[t]hird, there must be a causal connection between the alleged retaliation and the whistleblowing." Id. (footnote, citations, and internal quotation marks omitted).

Haw. Rev. Stat. § 378-63(a) states, "[a] person who alleges a violation of this part may bring a civil action for appropriate injunctive relief, or actual damages, or both within two years after the occurrence of the alleged violation of this part."[15] "The statute of limitations . . . runs from the date of the adverse action." Cambron v. Starwood Vacation Ownership, Inc., 945 F. Supp. 2d 1133, 1143 (D. Hawai`i 2013).

This is a motion for judgment on the pleadings, and the Court must construe all of Plaintiff's allegations as true. Here, Plaintiff asserts that she "verbally and in writing, reported her reasonable belief of Defendants' violations of laws, various regulations, and state contracts when she made the allegations and complaints described in this Complaint to Chopivsky and to the Child and Adolescent Division of the Department of Health." [Third Amended Complaint at ¶ 126.] Those allegations concerned: (1) Hoinsky's alleged sexual harassment of Plaintiff; and (2) Chopivsky's alleged demand for cuts to HBH's foster care program. [Id. at ¶¶ 33, 77.] Plaintiff states that, in response to these actions, "Defendants

---

[15] The Court notes that Plaintiff filed a complaint with the Hawai`i Civil Rights Commission ("HCRC") in May 2012. This district court has ruled that "[n]o statutory language gives the HCRC jurisdiction over claims brought under section 378-62." Lalau v. City & Cty. of Honolulu, 938 F. Supp. 2d 1000, 1020 (D. Hawai`i 2013). Moreover, "Title VII's and chapter 378's administrative processes do not toll the limitation period for a section 378-62 claim." Id. at 1021 (citing Lesane v. Hawaiian Airlines, 75 F. Supp. 2d 1113, 1125 (D. Haw. 1999)).

27

engaged in unlawful retaliatory practices that detrimentally affected the terms, conditions, and privileges of Plaintiff's employment." [Id. at ¶ 127.]

"A plaintiff bringing a [HWPA] claim must show an adverse employment action that affected his or her compensation, terms, conditions, location, or privileges of employment.  An adverse employment action is generally one that affects pay or status." Cambron, 945 F. Supp. 2d at 1143 (some citations omitted) (internal quotation marks omitted) (citing Black v. Correa, No. 07-00299 DAE-LEK, 2008 WL 3845230, at *11-12 (D. Haw. Aug. 18, 2008)).  Plaintiff resigned from HBH on February 10, 2012, and, although she planned to continue working after her resignation to "effectuate a smooth transition," [Third Amended Complaint at ¶ 81,] anything that occurred after her resignation did not happen in the course of her employment.  Given the statute of limitations of two years, Plaintiff had to file her claim under § 378-62 by February 10, 2014.  Plaintiff, however, did not file her complaint until March 28, 2014.  [Dkt. no. 1.] Plaintiff's retaliation claim is therefore barred by the statute of limitations.  HBH's Motion for Partial Judgment, insofar as it seeks judgment on the pleadings for Count V, is GRANTED, and Count V is DISMISSED WITH PREJUDICE.

F.   __IIED__

        Defendants seek dismissal under Rule 12(c) of

Plaintiff's claim against HBH and Chopivsky for IIED because

"Plaintiff fails to allege conduct that is sufficiently egregious

to support a claim of intentional inflection of emotional

distress." [Mem. in Supp. of Motion for Partial Judgment at 28.]

Plaintiff argues that Defendants' actions, as pled, are

sufficiently outrageous, and that, aside from that, "[t]he

question of 'outrageousness' . . . is ultimately an issue of fact

that should be considered by the jury." [Mem. in Opp. to Motion

for Partial Judgment at 35 (citation omitted).]

        Under Hawai`i law, a claim of IIED must show: "(1) that

the act allegedly causing the harm was intentional or reckless[;]

(2) that the act was outrageous[;] and (3) that the act caused

(4) extreme emotional distress to another."  Barber v. Ohana

Military Cmtys., LLC, Civil No. 14-00217 HG-KSC, 2014 WL 3529766,

at *10 (D. Hawai`i July 15, 2014) (citing Enoka v. AIG Hawaii

Ins. Co., Inc., 128 P.3d 850, 872 (Haw. 2006)).

        In explaining the type of "outrageous"
        conduct that gives rise to a claim for intentional
        infliction of emotional distress, the Hawaii
        Supreme Court has noted:

            It has not been enough that the
            defendant has acted with an intent which
            is tortious or even criminal, or that he
            has intended to inflict emotional
            distress, or even that his conduct has
            been characterized by "malice," or a
            degree of aggravation which would

29

> entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

> Dunlea v. Dappen, 83 Haw. 28, 38, 924 P.2d 196, 206 (1996). "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." Young v. Allstate Ins. Co., 119 Haw. 403, 429, 198 P.3d 666, 692 (2008).

Martin v. Ampco Sys. Parking, Civil No. 12-00598 SOM/RLP, 2013 WL 5781311, at *15-16 (D. Hawai`i Oct. 24, 2013).[16]

"[C]laims for negligent and intentional infliction of emotional distress are also governed by the two-year statute of limitations in Hawai`i Revised Statutes § 657-7."[17] Kawamoto v. Associated Indem. Corp., Civ. No. 12-00109 ACK-KSC, 2013 WL

---

[16] The district court subsequently granted a motion for reconsideration that is not relevant to the instant matter. See Martin v. Ampco Sys. Parking, Civil No. 12-00598 SOM/RLP, 2013 WL 6624124 (D. Hawai`i Dec. 16, 2013).

[17] Haw. Rev. Stat. § 657-7 states: "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13." The exceptions to the statute of limitations provided under Haw. Rev. Stat. § 657-13 – insanity, infancy, and imprisonment – do not apply here.

1195285, at *3 (D. Hawai`i Mar. 21, 2013) (citing Caraang v. PNC Mortg., 795 F. Supp. 2d 1098, 1121 (D. Haw. 2011)).  Plaintiff filed her Complaint on March 28, 2014, and therefore any claim against Defendants for IIED for actions that took place prior to March 28, 2012 are barred and must be dismissed.[18]

Plaintiff cites a number of alleged actions by Defendants that took place after March 28, 2012.  Plaintiff claims that throughout 2012 "Defendants repeatedly defamed and maligned" her; [Third Amended Complaint at ¶ 86;] "[i]n March through May 2012, Defendants additionally made multiple threats to Plaintiff and prospective employers"; [id. at ¶ 87;] and Defendants "refused to pay the full amount of Plaintiff's leave accrual, remaining salary and bonus amounts due, and grant Plaintiff's request for Family Medical Leave Act ("FMLA") leave during the three month transition out of her CEO/President position" [id. at ¶ 89].  It is clear to the Court that these actions, though troubling, are not sufficiently outrageous to plead a claim for IIED under Hawai`i law.  The Motion for Partial Judgment, insofar as it seeks judgment on the pleadings as to Count VII, is GRANTED and Count VII is DISMISSED WITH PREJUDICE.

---

[18] The statute of limitations for Plaintiff's claim of IIED was not tolled when Plaintiff filed a complaint with the HCRC or the United States Equal Opportunity Employment Commission.  See Hale v. Haw. Publ'ns, Inc., 468 F. Supp. 2d 1210, 1233 (D. Hawai`i 2006).

### G.  <u>Interference With Prospective Economic Advantage</u>

Count VIII states that, in May and June 2012, Plaintiff was in discussions with Trumpet Behavioral Health ("Trumpet") about "an executive level operations position opportunity and development position."  [Third Amended Complaint at ¶ 141.] Plaintiff alleges that Defendants "intentionally interfered with [her] prospective contracts and economic business relationships by making false announcements and threats."  [<u>Id.</u> at ¶ 144.] Defendants argue that:  the relationship between Plaintiff and Trumpet was not sufficiently close; they were merely seeking to enforce Plaintiff's employment contact; their actions did not affect the relationship between Plaintiff and Trumpet; and this claim is barred by Hawaii's workers' compensation statute.  [Mem. in Supp. of Motion for Partial Judgment at 32-33.]

The Hawai`i Supreme Court has stated:

Consequently, and premised in part upon Restatement (Second) of Torts § 766B (1979), the elements of the intentional tort of tortious interference with prospective business advantage are:

(1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal

> causation between the act of
> interference and the impairment of
> relationship, advantage, or expectancy;
> and (5) actual damages.

Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 113 Hawai`i 77,

116, 148 P.3d 1179, 1218 (2006) (footnote omitted) (quoting

Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91

Hawai`i 224, 258, 982 P.2d 853, 887 (1999)).  The Hawai`i Supreme

Court continued: "there must be a colorable economic relationship

between the plaintiff and a third party with the potential to

develop into a full contractual relationship.  The prospective

economic relationship need not take the form of an offer but

there must be specific facts proving the possibility of future

association."  Id. (emphases omitted) (quoting Locricchio v.

Legal Servs. Corp., 833 F.2d 1352, 1357 (9th Cir. 1987)).

There was not a sufficient relationship between

Plaintiff and Trumpet, and Defendants are entitled to summary

judgment on Count VIII.  Plaintiff states that "the record

provides extensive support that Defendants acted with wrongful

and improper intent to interfere with her prospective business

opportunities."  [Mem. in Opp. to Motion for Partial Judgment at

37.]  The record shows that Chopivsky emailed Trumpet employee

Lani Fritts ("Fritts") on May 3, 2012 ("Chopivsky Email").  [Yeh

Decl., Exh. F. (Chopivsky Email).]  That same day, Fritts

forwarded the Chopivsky Email to two of her colleagues and

informed them that "Kathy[19] is working for us and started yesterday as our Regional Director, Raelynn is not, and we don't have any plans to hire her." [Id. (5/3/12 email from Fritts to colleagues).] At the 12/7/15 Hearing, Plaintiff represented that she believes it was the Chopivsky Email that convinced Trumpet not to hire her.

This Court previously ruled that, where a plaintiff "does not allege the existence of a business relationship or prospective advantage or expectancy . . . before [the defendant's] alleged interfering conduct" the plaintiff fails to state a claim upon which relief can be granted, and the claim must be dismissed. See Lowther v. United States Bank N.A., 971 F. Supp. 2d 989, 1016 (D. Hawai`i 2013). At her deposition, Plaintiff stated that: she began discussing employment with Trumpet in February 2012; these discussions lasted until "probably" January 2013; and Trumpet never offered her a job. [Plf.'s Suppl., Exh. 1 (excerpts of 9/3/15 Depo. of Raelynn J. Hillhouse), at 31-33.] Thus, while Plaintiff states that Defendants intentionally sabotaged her relationship with Trumpet in May 2012, Trumpet had no plans to hire Plaintiff at that time, and her conversations with Trumpet continued for many months thereafter.

---

[19] Kathy refers to Kathy Iona, the former Director of Operations at HBH. [Third Amended Complaint at ¶ 28.]

34

Plaintiff's relationship with Trumpet was not sufficiently definite before Defendants' allegedly wrongful conduct. The Court FINDS that there is no issue of material fact and CONCLUDES that Defendants are entitled to judgment as a matter of law. The Motion for Partial Judgment, insofar as it seeks summary judgment on Count VIII, is GRANTED.

**H.** **Breach of Contract under *Kinoshita***

Defendants seek judgment on the pleadings on Count IX. Plaintiff states that HBH had a "longstanding policy, procedure, and practice to pay out departing employees' unused and accumulated leave/vacation and bonuses" and that, under <u>Kinoshita v. Canadian Pacific Airlines, Ltd.</u>, 68 Haw. 594, 724 P.2d 110 (1986), HBH had "a contractual obligation to its employees including Plaintiff to adhere to its policy and procedure." [Third Amended Complaint at ¶¶ 149-51.]

In <u>Kinoshita</u>, the Hawai`i Supreme Court held,

We think the employer here can hardly be free to selectively abide by the policies and procedures set forth in the Employee Rules which were "promulgated in an effort to defeat a unionization attempt." Surely, CP Air was striving to create an atmosphere of job security and fair treatment, one where employees could expect the desired security and even-handed treatment without the intervention of a union, when it distributed copies of the rules to the employees who were to vote in a representation election. It attempted to do so with promises of specific treatment in specific situations; it encouraged reliance thereon, particularly during the second attempt at unionization, with statements that "our written employment

> arrangements with you . . . constitute[] an
> enforceable contract" and "your rights in your
> employment arrangement are guaranteed."   CP Air
> thus created a situation instinct with an
> obligation.

68 Haw. at 603, 724 P.2d at 117 (alterations in original)

(citations and some internal quotation marks omitted).

    This Court has recently considered the issue of an

implied contract under <u>Kinoshita</u>, and concluded:

> The Hawai`i Supreme Court has
>
> > reaffirm[ed] the general principle that,
> > in the absence of a written employment
> > agreement, a collective bargaining
> > agreement, or a statutorily-conferred
> > right, employment is at-will.  Such at-
> > will employment is, "by definition,
> > . . . terminable at the will of either
> > party, for any reason or no reason at
> > all." <u>Best Place[, Inc. v. Penn Am.
> > Ins. Co.</u>], 82 Hawai`i [120,] 124, 920
> > P.2d [334,] 357 (1996).  As such,
> > parties to an at-will employment
> > contract enter into the contract with
> > full knowledge that the employment is
> > for an indefinite duration and can
> > terminate at the will of either party.
> > <u>Id.</u>  Correlatively, an employment
> > contract of indefinite duration will
> > generally be construed as giving rise to
> > an at-will employment relationship and
> > as therefore terminable at the will of
> > either party for any reason or no
> > reason. <u>Parnar [v. Americana Hotels,
> > Inc.</u>], 65 Haw. [370,] 374, 652 P.2d
> > [625,] 627 [(1982)].
>
> <u>Shoppe v. Gucci Am., Inc.</u>, 94 Hawai`i 368, 383, 14
> P.3d 1049, 1064 (2000) (some alterations in
> <u>Shoppe</u>) (some citations omitted).  However, the
> Hawai`i Supreme Court also recognized that "the
> previously unfettered right of employers to
> discharge employees 'can be contractually modified

36

and, thus, qualified by statements contained in
employee policy manuals or handbooks issued by
employers to their employees.'" <u>Id.</u> (quoting
<u>Kinoshita v. Canadian Pac. Airlines</u>, 68 Haw. 594,
601, 724 P.2d 110, 115-16 (1986)).  This district
court has stated that "<u>Kinoshita</u> does not
. . . require that an employment status can only
be altered by an employee manual.  Rather, the
test appears to be whether, considering all of the
circumstances, the employer has 'created a
situation instinct with an obligation.'" <u>Leong v.</u>
<u>Hilton Hotels Corp.</u>, 689 F. Supp. 1565, 1571 (D.
Hawai`i 1988) (some citations and internal
quotation marks omitted) (quoting <u>Kinoshita</u>, 724
P.2d at 117).

<u>Du Preez v. Banis</u>, CIVIL NO. 14-00171 LEK-RLP, 2015 WL 5768948,

at *10 (D. Hawai`i Sept. 30, 2015) (some alterations in <u>Du</u>

<u>Preez</u>).

   While Plaintiff attempts to extend the holding in

<u>Kinoshita</u>, it is clear from the plain language of the decision,

as well as from the interpretation of the decision by other

courts – including this one, that it applies only to the issue of

at-will employment.  Plaintiff does not cite any authority which

states that <u>Kinoshita</u> has been extended,[20] and the Court knows of

---

[20] Plaintiff states that her "contractual claim is
additionally supported by Hawaii precedent and the common law."
[Mem. in Opp. to Motion for Partial Judgment at 39.]  In support
of this contention, Plaintiff cites <u>Casumpang v. ILWU Local 142</u>,
108 Hawai`i 411, 421, 121 P.3d 391, 401 (2005).  In <u>Casumpang</u>,
the Hawai`i Supreme Court considered whether "the district court
erred in dismissing [the plaintiff's] complaint inasmuch as the
court improperly concluded that payment for unused vacation is
not included within the definition of wages as defined by HRS
§ 388-1."  <u>Id.</u>  In concluding that the district court had not
erred, the Hawai`i Supreme Court noted that under the common law,
"absent an express agreement or uniform custom, an employee is
(continued...)

no such authority.  Plaintiff's <u>Kinoshita</u> claim is not cognizable under existing law, and therefore Count IX of the Motion for Partial Judgment is GRANTED and Count IX is DISMISSED WITH PREJUDICE.

## III. <u>Summary</u>

The Motion to Strike is GRANTED IN PART AND DENIED IN PART.

- The Motion to Strike is GRANTED as to paragraphs seventeen and forty-two of the Declaration of Raelynn Hillhouse.

- The Motion to Strike is GRANTED as to the Declaration of Robert Davé.

- The Motion to Strike is DENIED as to the Declaration of Cynthia Curatalo.

The Motion for Partial Judgment is GRANTED IN PART AND DENIED IN PART.

- The Motion for Partial Judgment, insofar as it seeks judgment on the pleadings or, in the alternative, summary judgment on Count I is DENIED.

- The Motion for Partial Judgment, insofar as it seeks summary judgment on Plaintiff's claim for constructive discharge in Counts II and III is GRANTED.

- Plaintiff's request for a Rule 56(d) continuance is DENIED.

---

[20](...continued)
not entitled to payment for unused vacation following separation from employment." <u>Id.</u> (citing <u>Lim v. Motor Supply, Ltd.</u>, 45 Haw. 111, 121-22, 364 P.2d 38, 44, *reh'g denied*, 45 Haw. 198, 364 P.2d 38 (1961)).  In <u>Casumpang</u>, the Hawai`i Supreme Court does not cite, or reference in any way, <u>Kinoshita</u>.  Moreover, insofar as Plaintiff uses this argument to broaden Count IX to include a general claim under common law, this change of position is improper in a memorandum in opposition and must be rejected by the Court.

- The Motion for Partial Judgment, insofar as it seeks summary judgment on Plaintiff's claim for lost bonuses is GRANTED.

- The Motion for Partial Judgment, insofar as it seeks judgment on the pleadings on Count IV is GRANTED IN PART AND DENIED IN PART.  It is GRANTED insofar as it seeks dismissal of Plaintiff's claim that Chopivsky aided and abetted HBH, and that claim is DISMISSED WITH PREJUDICE.  It is DENIED insofar as it seeks dismissal of Plaintiff's claims that Chopivsky aided and abetted individual HBH employees.

- The Motion for Partial Judgment, insofar as it seeks judgment on the pleadings on Count V, is GRANTED, and Count V is DISMISSED WITH PREJUDICE.

- The Motion for Partial Judgment, insofar as it seeks judgment on the pleadings as to Count VII, is GRANTED, and Count VII is DISMISSED WITH PREJUDICE.

- The Motion for Partial Judgment, insofar as it seeks summary judgment on Count VIII, is GRANTED.

- The Motion for Partial Judgment, insofar as it seeks judgment on the pleadings on Count IX, is GRANTED, and Count IX is DISMISSED WITH PREJUDICE.

### CONCLUSION

On the basis of the foregoing, Defendants' Motion for Partial Judgment, filed on October 2, 2015, and Motion to Strike, filed on November 23, 2015, are HEREBY GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 29, 2016.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge